**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ANDREA SAMAYOA, individually and    :     Case No.: 1:22-cv-03389
on behalf of all others similarly situated,   :
                                     :
              Plaintiff,        :
                                     :
            -against-       :
                                     :
iMOBILE, LLC and iMOBILE USA, LLC,   :
                                     :
           Defendants.     :
-------------------------------------------------------------X

**DECLARATION OF MICHAEL PALITZ, ESQ. IN SUPPORT OF PLAINTIFFS'**
***UNOPPOSED* MOTION FOR APPROVAL OF SETTLEMENT**

      I, Michael Palitz, am an attorney admitted to practice law in the Eastern District of New York. I declare, under the penalty of perjury, that the foregoing is true and correct based upon my knowledge, information, and belief:

      1.     I am an attorney at Shavitz Law Group, P.A. ("SLG") and am counsel for Plaintiffs in this matter. SLG is an 8-attorney firm based in Boca Raton, Florida, with an office in New York City that focuses on representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws.

**Firm Background**

      2.     SLG has significant experience prosecuting wage and hour class and collective actions such as this one.

      3.     Since the founding of SLG in 1999, the firm has represented tens of thousands of employees in unpaid overtime and minimum wage claims in actions across the United States. The firm is highly experienced in collective and class action litigation for unpaid wages.

4.    In recent years, the firm has served or been appointed as class counsel or co-class counsel in the following cases, among others:

*Fiore v. Goodyear Tire & Rubber Co.*, No. 09 cv 843 (M.D. Fla);

*Hosier v. Mattress Firm, Inc.*, No. 10 cv 00294 (M.D. Fla.);

*Romero v. Florida Power & Light Co.*, No. 09 cv 1401 (M.D. Fla.);

*Saliford v. Regions Fin. Corp. et al.*, No. 10 cv 610310 (S.D. Fla.);

*Raley v. Kohl's Corp., et al.*, No. 09 cv2340 (M.D. Fla.);

*Simpkins v. Pulte Home Corp.*, No. 08 cv 00130 (M.D. Fla.);

*Biscoe-Grey v. Sears Holding Corp.*, No. 09 cv 81408 (S.D. Fla.);

*Mayfield v. Lennar Corp.*, No. 08 cv 426 (M.D. Fla.);

*Cerrone v. KB Home Florida, LLC et al.*, No. 07 cv 14402 (S.D. Fla.);

*Lewis v. Iowa Coll. Acq. Corp. & Kaplan Higher Educ. Corp.*, No. 08 cv 61011 (M.D. Fla.);

*Patterson v. Palm Beach Cnty. Sch. Bd.*, No. 07 cv 80240 (S.D. Fla.);

*Briggs, et. al. v. PNC Fin. Servs. Gr., Inc., et al.*, No. 15 cv 10447 (N.D. Ill.);

*Williams, et al. v. Follett Corporation, et al.*, No.  17 cv 02318 (N.D. Ill.);

*Watson v. BMO Financial Corp., et al.*, No. 15 cv 11881 (N.D. Ill.);

*McCue v. MB Financial, Inc. et al.*, No. 15 cv 988 (N.D. Ill.);

*Robbins v. Abercrombie & Fitch Co.*, No. 15 cv 6187 (W.D.N.Y.);

*Besic v. Byline Bank, Inc., et al.*, No.15 cv 8003 (N.D. Ill.);

*Snodgrass v. Bob Evans Farms, Inc.*, No. 12 cv 768 (S.D. Ohio);

*Waggoner v. U.S. Bancorp. et al.*, No. 14 cv 1626 (N.D. Ohio);

*Kampfer v. Fifth Third Bank*, No. 14 cv 2849 (N.D. Ohio);

*Waggoner v. U.S. Bancorp. et al.,* No. 14 cv 1626 (N.D. Ohio);

*Bucceri v. Cumberland Farms, Inc.,* No. 15 cv 113955 (D. Mass.);

*Danley v. Office Depot, Inc., et al.,* No. 14 cv 81469 (S.D. Fla.);

*Essex v. The Children's Place, Inc.,* No. 15 cv 05621 (D.N.J.);

*Krokos, et al v. The Fresh Market, Inc.,* No. 16 cv 12082 (D.Mass.);

*Long v. HSBC USA Inc.,* No. 14 cv 6233 (S.D.N.Y.);

*Prena v. BMO Financial Corp.,* et al., No.14 cv 09175 (N.D. Ill.);

*Puglisi v. TD Bank N.A.,* No. 13 cv 6037 (E.D.N.Y.);

*Roberts v. TJX Cos., Inc., et al.,* No. 13 cv 13142 (D. Mass.);

*Stallard v. Fifth Third Bank, et al,.* No. 12 cv 01092 (W.D.Pa.);

*Amador v. Morgan Stanley & Co, LLC.* No. 11 cv 4326 (S.D.N.Y.);

*Wright v. Flagstar Bank FSB et al.,* No. 13 cv 15069 (E.D. Mich.);

*Zeltser v. Merrill Lynch & Co., Inc., et al.,* No. 13 cv 1531 (S.D.N.Y.);

*Clem v. Keybank, N.A.,* No. 13 cv 789 (S.D.N.Y.);

*Yuzary v. HSBC Bank USA, N.A.,* No. 12 cv 3693 (S.D.N.Y.);

*Beckman v. KeyBank, N.A.,* No. 12 cv. 7836 (S.D.N.Y.);

*Hernandez v. Merrill Lynch & Co., Inc., et al.,* No. 11 cv 8472 (S.D.N.Y.);

*Palacio v. E\*TRADE Fin. Corp., et al.,* No. 10 cv 4030 (S.D.N.Y.);

*Stewart v. Prince Telecom, et al.,* No. 10 cv 4881 (S.D.N.Y.);

*Nash v. CVS Caremark Corp.,* No. 09 cv 79 (D.R.I.);

*Cottle v. Papa Murphy's Company Stores, Inc.,* No. 3:19-cv-45 (M.D. Fla.).

5.      I am a Partner in SLG's New York office, and have been with the firm since 2015.

After receiving my Juris Doctor degree, cum laude, from Pace Law School in 2010 where I also

3

served as the Editor-in-Chief of the Pace International Law Review, I was admitted to the New Jersey and New York Bars in June 2010 and September 2010, respectively. I am also admitted to this Court and the U.S. District Courts for the District of New Jersey, the Southern District of New York, the Northern District of New York, the District of Colorado, and the Western District of New York. I have presented before the Suffolk County Bar Association on Fair Labor Standards Act ("FLSA") issues. Since graduating from law school, I have focused my practice exclusively on workers' rights and litigating complex wage and hour class and collective actions throughout the country, including trying an FLSA collective action arbitration to a verdict for employees. I graduated from the College of the Holy Cross in 2005 with a B.A. in Economics and History.

6.    Gregg Shavitz is a graduate of the University of Miami School of Law with an undergraduate degree from Tufts University. Mr. Shavitz is an experienced trial attorney with a practice that concentrates on representing plaintiffs in unpaid wage litigation involving the FLSA, and state laws. Mr. Shavitz has represented tens of thousands of such plaintiffs over that period of time. Additionally, he has lectured in the past at seminars sponsored by the Labor and Employment Section of the Florida Bar, and has spoken at the Labor and Employment Section Certification Review Seminar on two (2) separate occasions as well as the Academy of Florida Trial Lawyers Workhorse Seminars. He has also been awarded Florida Trend Magazine's Legal Elite for various years including 2014 in the area of Labor & Employment law; South Florida Legal Guide – Top Lawyer – Wage and Hour law – 2009-2019; Top Lawyer Up and Comer – Wage and Hour law – 2004, 2006, and 2009; and South Florida Legal Guide – Top Lawyers List – 2009-2019; among other awards and honors. Mr. Shavitz has also earned the distinction of Top Lawyer in Palm Beach Illustrated (2018), and is a lifelong fellow of the Florida Bar Foundation. Mr. Shavitz has held the highest AV Peer Review Rating from LexisNexis Martindale-Hubbell for

preeminent attorneys from 2000 to the present.  Mr. Shavitz has been admitted to the Florida Bar

since 1994, and is also admitted to U.S. District Courts for the Southern, Middle and Northern

Districts of Florida, the U.S. Eleventh Circuit Court of Appeals and U.S. Third Circuit Court of

Appeals.

7.      Camar R. Jones has been an attorney with SLG since 2009.  Mr. Jones has 15 years'

experience litigating employment matters under state and federal anti-discrimination and wage and

hour laws. Prior to joining SLG, he worked as an associate attorney with the Fort Lauderdale labor

and employment boutique, The Amlong Firm, representing plaintiffs in discrimination, unpaid

wages and FLSA claims throughout South Florida, and with The Kopelowitz Ostrow Firm, PA,

where he represented plaintiffs in discrimination, unpaid wages, FLSA, USERRA claims, and

FMLA claims. Additionally, he has counseled employers on compliance with the various state and

federal labor and employment laws, defended employers in claims filed by employees, and

represented employers in enforcing non-compete and trade secret agreements. Mr. Jones currently

represents plaintiffs in collective actions in Federal Courts throughout the country. Mr. Jones

received his Juris Doctor degree from Stetson University College of Law in 2003. He is admitted

to the Florida Bar, the U.S. District Courts for the Southern, Middle, and Northern Districts of

Florida, and the District of Colorado, as well as the Eleventh Circuit Court of Appeals. He is also

AV-Preeminent rated by LexisNexis Martindale-Hubbell, and has been named a "Rising Star" and

"SuperLawyer" every year since 2013.

8.      Plaintiffs' Counsel's lodestar amount in this action totals $241,980.00, as outlined

below:

| Timekeeper | Rate | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $750.00 | 97.6 | $73,200.00 |
| Camar Jones | $600.00 | 220.9 | $132,540.00 |
| Michael Palitz | $600.00 | 48.8 | $29,280.00 |
| Paralegals | $150.00 | 46.4 | $6,960.00 |

| Totals | | 413.7 | $241,980.00 |
|--------|---|-------|-------------|

9.      In addition to attorneys' fees, Plaintiffs' Counsel has also incurred $5,942.00 in

costs, as outlined below:

| Item | Amount |
|------|--------|
| Eastern District of New York filing fee | $402.00 |
| Service of Process | $140.00 |
| Mediator fee | $5,400.00 |
| **Total** | **$5,942.00** |

10.     A true and correct copy of the parties' Settlement Agreement and Release is

attached as Exhibit A.

Dated: July 25, 2022                    Respectfully submitted,
       New York, New York

                                        s/ Michael J. Palitz
                                        Michael J. Palitz

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff, ANDREA SAMAYOA (the "Named Plaintiff"), individually and on behalf of all others similarly situated who comprise of the "Collective", and Defendants, IMOBILE LLC, and IMOBILE USA, LLC ("Defendants" or "iMobile") (singularly, a "Party") (Defendants together with Named Plaintiff, the "Parties").

## RECITALS

**WHEREAS**, Named Plaintiff filed a Collective Action Complaint against Defendants and a Consent to become a party in a collective action on or about June 8, 2022, in the United States District Court for the Eastern District of New York, which was assigned docket number DKT. NO. 1 (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims as set forth in this Agreement, including all claims asserted in the Litigation and those claims that could have been so asserted under the Fair Labor Standards Act ("FLSA") or and/or under any other law, regulation, or ordinance regulating the payment of wages relating to the alleged non-payment of overtime to individuals employed as salaried, exempt-classified Store Managers ("SMs") at iMobile stores in the United States during the relevant periods, as defined below;

**WHEREAS**, solely for the purpose of settling the Action, and without admitting any wrongdoing or liability, Defendants have agreed, for settlement purposes only, to the conditional certification of a collective under §216(b) of the FLSA;

**WHEREAS**, Defendants, while continuing to deny any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or related in any way whatsoever to, the Litigation. Nothing in this agreement constitutes an admission of liability by Defendants with respect to any of the claims asserted in the Action;

**WHEREAS**, Plaintiff's Counsel analyzed and evaluated the merits of the claims made against iMobile and the impact of this Agreement on Named Plaintiff and Collective Action Members (collectively as the "Collective"), and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the collective members;

**WHEREAS,** solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendant has agreed, for settlement purposes only, to the conditional certification of a collective under §216(b) of the FLSA; and

**WHEREAS**, Named Plaintiff and Defendants, by and through their respective counsel, have engaged in extensive arms-length settlement discussions, and with the assistance of a

mutually-retained mediator, Martin Scheinman, Esq., in connection with the potential resolution of the Litigation. The Parties — subject to the approval of the Court — have elected to settle the Litigation pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "**Acceptance Period**" means the ninety (90)-day period from the date of issuance of the Settlement Checks to Eligible Collective Members during which they may sign and deposit, cash or otherwise negotiate the Settlement Check to become a Participating Collective Member.

1.2 "**Agreement**" means this Settlement Agreement and Release.

1.3 "**Approval Order**" means the Order entered by the Court approving the terms and conditions of this Agreement, certifying a collective action pursuant to § 216(b) of the FLSA for settlement purposes only, authorizing distribution of the settlement payments as provided for in this Agreement, approving the professional fees, expenses and costs, and dismissing the Litigation with prejudice.

1.4 "**California Subgroup**" means Eligible Collective Members who were employed by iMobile in the State of California during the four (4) year period preceding August 28, 2021.

1.5 "**California Relevant Period**" means the four (4) year period preceding August 28, 2021.

1.6 "**Complaint**" means the Complaint [D.E. 1] dated June 8, 2022 filed by Named Plaintiff in this Litigation.

1.7 "**Costs and Fees**" means Plaintiff's Counsel's Court-approved attorneys' fees, costs, and expenses.

1.8 "**Court**" means the United States District Court for the Eastern District of New York.

1.9 "**Defendants**" or "**iMobile**" means iMobile, LLC and iMobile USA, LLC.

1.10 "**Defendants' Counsel**" means Kaufman Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797.

1.11  **"Effective Date"** Provided no appeal is timely filed, and no application has been made for reconsideration or rehearing, the "Effective Date" means thirty (30) days after the Court has entered the Approval Order. If such an appeal or application for reconsideration or rehearing is timely filed, the latest of the following, if applicable, becomes the Effective Date: (1) any appeal from the Approval Order has been finally dismissed; (2) the Approval Order has been affirmed on appeal in a form substantially identical to the form of the Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Approval Order has expired and no such petition for review has been filed; and/or (4) if a petition for review of an appellate decision affirming the Approval Order is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Approval Order in a form entered by the Court.

1.12  **"Eligible Collective Member"** means the members of the Multi-State Subgroup, New York Subgroup and California Subgroup, as defined herein.

1.13  "**Eligible Work Week**" means any non-company holiday weeks each Eligible Collective Member was employed by iMobile as a salaried, exempt-classified SM during the Relevant Period, ***excluding*** the weeks between March 15, 2020 and September 30, 2020, when iMobile's store operations were impacted by the COVID-19 pandemic.

1.14  "**Employer Payroll Taxes**" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.15  "**Gross Fund**" means Six Hundred Forty Thousand and 00/100 Dollars ($640,000.00), which is the maximum amount that iMobile has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to the Eligible Collective Members; the costs of the Settlement Administrator; and any Court-approved Service Award to the Named Plaintiff. The Gross Fund does not include the Employer Payroll Taxes, which will be paid separately by iMobile.

1.16  "**Last Known Address**" or **"Last Known Addresses"** means the most recently recorded personal mailing address for an Eligible Collective Member as shown in Defendants' records.

1.17  "**Litigation**" or the "**Action**" means the lawsuit *entitled Samayoa* v. *iMobile, LLC, et. al.,* No. 1:22-cv-03389 in the United States District Court for the Eastern District of New York.

1.18  **"Mediator"** Mediator shall mean Martin F. Scheinman, Esq.

1.19  "**Multi-State Relevant Period**" means the two (2) year period preceding August 28, 2021.

**1.20** "**Multi-State Subgroup**" means all Eligible Collective Members who were employed by iMobile in the states of Ohio, Arizona, Wisconsin, Indiana, Minnesota, Texas, Connecticut, West Virginia, Colorado, Delaware, Massachusetts, Maryland, New Jersey, Pennsylvania, Iowa, Virginia, Maine, New Hampshire, and Illinois during the two (2) year period preceding August 28, 2021.

**1.21** "**Named Plaintiff**" means Andrea Samayoa.

**1.22** "**Net Fund**" means the remainder of the Gross Fund after deductions, payments, or allocations for: (a) Court-approved attorneys' fees and costs for Plaintiff's Counsel; (b) any Court-approved Service Awards; and (c) the cost of the Settlement Administrator.

**1.23** "**New York Relevant Period**" means the six (6) year period preceding August 28, 2021.

**1.24** "**New York Subgroup**" means Eligible Collective Members who were employed in the State of New York during the six (6) year period preceding August 28, 2021.

**1.25** "**Participating Collective Members**" means each Eligible Collective Member who timely signs, endorses, cashes, deposits, or otherwise negotiates a Settlement Check.

**1.26** "**Parties**" collectively means the Named Plaintiff and Defendants.

**1.27** "**Plaintiff's Counsel**" means Shavitz Law Group, P.A., 951 Yamato Road, Suite 285, Boca Raton, Florida 33431.

**1.28** "**Qualified Settlement Fund**" or "**QSF**" means the non-interest-bearing bank account controlled by an authorized Settlement Administrator for the purpose of distributing the Gross Fund in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Approval Order, as well as any other or further Orders of the Court.

"**Releasees**" or "**iMobile**" means iMobile LLC and iMobile USA, LLC, iMobile, iMobile of AZ LLC, iMobile of CA LLC, iMobile of CO LLC, iMobile of CT Operations LLC, iMobile of DE LLC, iMobile of IN LLC, iMobile of MA LLC, iMobile of MD LLC, iMobile of ME LLC, iMobile of MN LLC, iMobile of NH LLC, iMobile of NJ LLC, iMobile of NY LLC, iMobile of OH LLC, iMobile of PA LLC, iMobile of RI LLC, iMobile of TX LLC, iMobile of Virginia LLC, iMobile of WI LLC, iMobile USA of Illinois LLC, and iMobile USA of Iowa LLC as well as all of their current and former heirs, executors, owners, managers, parents, subsidiaries, successors, supervisors, employees, directors, administrators, officers, shareholders, accountants, attorneys, insurers and reinsurers, insurance carriers, and agents, as well as anyone employed by the Released Entities, or any person/entity who could deemed to be an "employer" of any member of the Settlement Collective, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), creditors, insurers, reinsurers, sureties, predecessors, and successors of the

foregoing, as well as the officers, managers, owners, employee benefit plan administrators, owners, shareholders, fiduciaries, trustees, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them, in their individual and/or representative capacities, parent companies, subsidiaries, related or affiliated companies, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such.

1.29    **"Released Claims"** means any and all known and unknown claims, complaints, causes of action, lawsuits, demands, back-wages, benefits, attorneys' fees, pain and suffering, debts, controversies, damages, judgments, in law or equity, of any kind, nature arising under the Fair Labor Standards Act, the New York Labor Law, the California Labor Code, the Pennsylvania Minimum Wage Act, and/or any other law, regulation, or ordinance regulating the payment of wages, including but not limited to, all claims set forth in the Litigation, all claims of unpaid compensation, unpaid minimum wage, unpaid overtime, unpaid commissions, unpaid bonuses, unpaid final wages, unpaid meal break compensation, unpaid rest break compensation, unpaid tips, improper deductions, unpaid spread of hours, unpaid fringe benefits (including any vacation, paid time off, and sick pay), unpaid accrued benefit time, liquidated damages, and statutory penalties (including, but not limited to, all damages or penalties due to improper wage notices, improper wage statements, and/or timely payment provisions) during the time a Participating Collective Member was employed by Releasees as a salaried, exempt-classified Store Manager up until October 15, 2021.

1.30    **"Service Award Released Claims"** means any and all claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising of any kind or nature, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, tort, contractual or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.  This release also includes any such claims under the New York State Labor Law, and the Fair Labor Standards Act.

1.31    "**Store Manager**" or "**SM**" means those persons employed by iMobile as salaried, exempt-classified SMs in the United States during the relevant periods.

1.32    **"Settlement Administrator"** shall mean Arden Claims, LLC.

1.33    **"Settlement Administrator's Fee"** means the Settlement Claims Administrator's professional service fees and costs.

**1.34**  "**Settlement Agreement**" or "**Agreement**" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.35**  "**Settlement Checks**" means the checks issued to each Eligible Collective Member for their proportionate share of the Net Fund (less lawful deductions and withholdings pursuant to Section 3.4(C)(2) of this Agreement) calculated in accordance with this Agreement.  As well, in the case of the Named Plaintiff, the term Settlement Checks includes a separate check for the payment of the Service Award.

**1.36**  "**Settlement Data**" means the payroll data produced to Plaintiff's Counsel which served as the basis for Plaintiff's Counsel's estimation of the damages for the Eligible Collective Members and the financial terms of the Settlement.

**1.37**  "**Settlement Notice" or "Notice**" means the document entitled Notice of Settlement to be approved by the Court in a form substantially similar to the Notice attached hereto as **Exhibit 1**.

## 2.    APPROVAL AND NOTICE TO PLAINTIFFS

**2.1**  Binding Agreement.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**  Settlement Administrator.

**2.3.1**  Retention.  The Parties hereby designate Arden Claims, LLC ("Arden") to act as Settlement Claims Administrator. The Parties agree to formally engage Arden to administer this settlement.

**2.3.2**  Responsibilities of Settlement Administrator.  The Settlement Administrator shall be responsible for: (i) preparing, printing and disseminating to Eligible Collective Members the Notice; (ii) performing a skip trace and resending, within three (3) days of receipt, any Notice Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number for the purpose of responding to inquiries made by Eligible Collective Members until 180 days after the Effective Date; (v) promptly furnishing to counsel for the Parties copies of any written or electronic communications from the Eligible Collective members  (vi) referring to Plaintiff's Counsel all inquiries by Eligible Collective Members regarding matters not within the Settlement Administrator's duties specified herein; (vi) responding to inquiries of counsel for the Parties relating to the Settlement Administrator's duties specified herein; (vii) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (viii) maintaining adequate records of its activities, including the dates of the mailing of Notices, returned mail and any and all other actual or attempted written or electronic communications with Eligible Collective Members; (ix) confirming in writing to counsel for the Parties

and the Court its completion of the administration of the claims process; (x) timely responding to communications from the Parties and their counsel; (xii) calculating and paying each Eligible Collective Member's taxes; (xi) preparing and providing Defendants with the Eligible Collective Member's IRS W-9 and W-4 tax forms; (xiii) mailing all required tax forms to Eligible Collective Members and Plaintiff's Counsel as provided herein; (xiv) setting up a Qualified Settlement Fund to be used for the distribution of: a) all Settlement Checks to Eligible Collective Members; b) the Court-approved costs and fees to the Plaintiff's Counsel; c) the Court-approved fees of the Settlement Claims Administrator; and d) the Court-Approved Service Award to the Named Plaintiff; (xv) calculating the amount of each Eligible Collective Member's Individual Settlement Amount; and (xvi) such other tasks as the Parties mutually agree or which the Court in the Litigation is pending directs.

**2.3.3** Access to the Settlement Administrator.    The Parties will have equal access to the Settlement Administrator. Plaintiff's Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Administrator and provide reasonable assistance in administering the terms of this Agreement.

**2.4** Plaintiff's Counsel shall file a motion for approval of this Settlement Agreement ("Approval Motion"). With the Approval Motion, Plaintiff's Counsel also will file the Settlement Agreement and all exhibits thereto. Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable and dismissing the Litigation with prejudice; (b) certifying a collective action pursuant to § 216(b) of the FLSA for settlement purposes only; and (c) approving the proposed Settlement Notice to be sent to the Eligible Collective Members, and the Notice process.

**2.5** iMobile will fund the QSF *via* wire transfer as follows:

**2.5.1** Within fourteen (14) days of the Effective Date, iMobile shall deposit the sum of $40,000.00 into the QSF. The Settlement Administrator's expenses and the Service Award will paid from this payment.

**2.5.2** Within thirty (30) days of the Effective Date, iMobile shall deposit the sum of $203,482.18 into the QSF to pay the claims of the California Sub-Group Members.

**2.5.3** Within Seventy-Five (75) days of the Effective Date, iMobile shall deposit the sum of $94,078.76 into the QSF to pay the claims of the New York Sub-Group Members.

**2.5.4** Within ninety (90) days of the Effective Date, iMobile shall deposit the sum of $69,906.40 into the QSF to pay the claims of the Multi-State Sub-Group Members who were employed in Colorado, Delaware, Massachusetts, Maryland, New Jersey, Pennsylvania, Illinois, Iowa, Virginia, Maine, and New Hampshire.

**2.5.5**   Within one hundred ten (110) days of the Effective Date, iMobile shall deposit the sum of $32,532.67 into the QSF to pay the claims of Multi-State Sub-Group Members employed in Ohio, Arizona, Wisconsin, Indiana, Minnesota, Texas, Connecticut, and West Virginia.

**2.5.6**   Within one hundred thirty (130) days of the Effective Date, shall deposit the sum of $200,000 into QSF to pay Plaintiff's Counsel's attorneys' fees and costs.

**2.5.7**   Reverted funds from uncashed Settlement Checks may be used to satisfy any of the payments above in this Section 2.5.

**2.6**   Within seven (7) days after the Effective Date, iMobile shall send to the Settlement Administrator an excel spreadsheet containing the following information for the Eligible Collective Members: names, last known mailing addresses, last known email addresses, social security numbers, and dates of employment as salaried, exempt-classified SMs.

**2.7**   Settlement Notices and Settlement Checks will be mailed, *via* First Class U.S. mail, postage prepaid, to Eligible Collective Members. The Notice will also be sent to the Eligible Collective Members *via* e-mail. The Settlement Notices and Settlement Checks will be distributed based on the following schedule:

**2.7.1**   Within thirty-seven (37) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the California Sub-Group Members.

**2.7.2**   Within Eighty-Three (82) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the New York Sub-Group Members.

**2.7.3**   Within ninety-seven (97) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the Multi-State Sub-Group Members who were employed in Colorado, Delaware, Massachusetts, Maryland, New Jersey, Pennsylvania, Illinois, Iowa, Virginia, Maine, and New Hampshire.

**2.7.4**   Within one hundred seventeen (117) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the Multi-State Sub-Group Members employed in Ohio, Arizona, Wisconsin, Indiana, Minnesota, Texas, Connecticut, and West Virginia.

**2.8**   The Notice will advise the Eligible Collective Members of the Settlement and will explain how their settlement share was determined. The Notice will also advise Eligible Collective Members that by endorsing, negotiating, signing, cashing, or depositing the settlement check, they will provide Releasees with a release of their claims arising under the FLSA and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages during the time they worked as salaried, exempt-classified Store Managers up to October 15, 2021.

**2.9**    Settlement Checks issued pursuant to this Agreement shall expire ninety (90) days following their issuance ("Acceptance Period").  In the event a Plaintiff reports a lost or destroyed Settlement Check within the Acceptance Period, the Settlement Administrator shall issue a stop payment order on the original check and issue a new check within seven (7) days of notification of the check being lost or destroyed.  The reissued check shall be valid for the longer of forty-five (45) days from the date the check is re-mailed, or the remainder of the Acceptance Period.

**2.10**   All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**"RELEASE OF CLAIMS:**

By negotiating, signing, cashing, endorsing and/or depositing this check, I consent to join the Litigation entitled *Samayoa* v. *iMobile, LLC, et. al.* and I hereby release Defendants and Releasees from any and all wage and hour claims under the Fair Labor Standards Act and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages including such claims brought or which could have been brought in the Litigation for the period of time I was employed as a salaried, exempt-classified Store Manager up until October 15, 2021."

**2.11**   Any Notice Packets returned undeliverable shall be skip-traced one (1) time within three (3) days of receipt of returned Notice to obtain a new address and be re-mailed by First Class U.S. Mail along with the settlement check.  The Eligible Collective Member shall have the longer of forty-five (45) days from the date the check is re-mailed, or the remainder of the Acceptance Period to negotiate the settlement check.

**2.12**   Plaintiff's Counsel and Defendants' Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process.   The Settlement Administrator will periodically update Plaintiff's Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

**2.13**   Retention/Filing of Copies of Settlement Checks.  The Settlement Administrator shall on a weekly basis compile and transmit to Defendants' Counsel and Plaintiff's Counsel statistics on the number of Eligible Collective Members who have signed and cashed Settlement Checks.  At the end of the Acceptance Period, the Settlement Administrator shall provide to Plaintiff's Counsel and Defendants' Counsel copies of signed and cashed checks.

**2.14**   Effect of Court Failure to Approve Settlement.  In the event that the Court fails to approve the Settlement, the Parties: (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement.  In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the

Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted, except that both parties agree to work cooperatively and to petition the court for additional time such that neither party is prejudiced by the delay caused by the parties' settlement efforts.

## 3    SETTLEMENT TERMS

### 3.1    Settlement Payments.

(A)    Defendants agree to pay up to a maximum gross amount of Six Hundred Forty Thousand and 00/100 Dollars ($640,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Collective Members, any Court-approved Service Award, and the Settlement Administrator's costs, and Plaintiff's Counsel's attorneys' fees and costs.  Defendants will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B)    Any funds that remain unclaimed by Eligible Collective Members who do not timely sign and cash their Settlement Checks before the end of the Acceptance Period shall revert to iMobile.

### 3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)    In their Approval Motion, Plaintiff's Counsel shall ask the Court to approve payment of Two Hundred Thousand and 00/100 Dollars ($200,000.00) as an award of Costs and Fees.  This amount shall constitute full satisfaction of any claim for attorneys' fees and costs.

(B)    The settlement is not conditioned on the Court's approval of Plaintiff's Counsel's petition for fees, costs and expenses.  The outcome of any proceeding related to Plaintiff's Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval.  In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.  Any money requested for attorneys' fees and costs that are not approved by the Court shall remain part of the Net Fund.

(C)    Within one hundred thirty-seven (150) days of the Effective Date, the Settlement Administrator shall wire to Plaintiff's Counsel the amount of Costs and Fees that have been approved by the Court.

(D)    All funds remaining in the QSF after the above payments are made, and after the last of the re-issued Settlement Checks expire, shall be returned to iMobile.

### 3.3    Service Award to Named Plaintiff.

(A)     In their Approval Motion, Named Plaintiff will apply to the Court to receive a Service Award from the Gross Fund in the amount of Five Thousand and 00/100 ($5,000.00).

(B)     The Service Award and any requirements for obtaining any such payment are separate and apart from, and in addition to, the Named Plaintiff's recovery from the Net Fund.  The settlement is not conditioned on the Court's approval of the Service Award.  The substance of the Named Plaintiff's application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement.   The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval.  Any Service Award approved by the Court shall be deemed non-wage compensation in its entirety and shall be reported to the IRS on a Form 1099.  The Named Plaintiff shall provide Releasees with a release of the Service Award Recipient Released Claims in the form annexed hereto as **Exhibit 2.**  The Named Plaintiff must execute this release to obtain the Service Award.  Any Service Award money not approved by the Court shall remain part of the Net Fund.

(C)     Within twenty-one (21) days of the Effective Date, the Settlement Administrator shall issue the Service Award to the Named Plaintiff.

**3.4     Calculation of Eligible Collective Members' Payments.**

(A)     The allocation to each Eligible Collective Member for their Settlement Checks will be made from the Net Fund.  The estimated proportionate share of the Net Fund for each Eligible Collective Member will be determined pursuant to the following formula:

> 1.     Calculate the Net Fund by deducting the Costs and Fees, claims administration costs, and Service Awards from the total Gross Fund.
>
> 2.     Calculate the number of each Eligible Collective Member's Eligible Work Weeks.
>
> 3.     Credit Eligible Collective Members in the Multi-state Subgroup one (1) point for each Eligible Work Week worked during the Multi-State Relevant Period. Additionally, to the extent that any such Multi-State Subgroup Member was employed during the one-year period preceding August 28, 2019, such individual will be credited .5 point for each of their Eligible Work Weeks worked during that 1-year period preceding August 28, 2019.

4.   Credit Eligible Collective Members in the New York Subgroup one (1) point for each Eligible Work Week worked during the six-year period preceding August 28, 2021.

5.   Credit Eligible Collective Members in the California Subgroup three (3) points for each Eligible Week worked during the four (4)-year period preceding August 28, 2021.

(B)   To calculate each Eligible Collective Member's Individual Settlement Amount:

1.   Add the value of all points for the Eligible Collective Members together to obtain the "Total Denominator;"

2.   Divide the number of points for each Eligible Collective Member by the Total Denominator to obtain each Eligible Collective Member's allocated percentage of the Net Fund; and

3.   Multiply each Eligible Collective Member's Percentage of the Net Fund against the Net Fund to determine each Eligible Collective Member's Individual Settlement Amount.

4.   The sum of the Eligible Collective Members' Individual Settlement Amounts shall equal the Net Fund.

(C)   Tax Characterization of Payments.

(1)   For tax purposes, 50% of the payment of an Eligible Collective Member's Individual Settlement Amount shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

(2)   Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and for Participating Collective Members only shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without withholding and for Participating Collective Members only shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099 The Defendants shall be responsible for calculating payroll tax and withholding, issuing the Settlement Checks and Service Awards and, for Participating Collective Members, issuing IRS Form W-2

and Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and for which an IRS Form 1099 will be issued to Shavitz Law Group, P.A. Any Service Award pursuant to Section 3.3 shall be deemed non-wage compensation in its entirety for which an IRS Form 1099 will be issued to the Named Plaintiff.

(3)    The employee portion of all applicable income and payroll taxes will be the sole responsibility of the Participating Collective Member receiving and negotiating the Settlement Check. iMobile makes no representations, and it is understood and agreed that iMobile has made no representations, as to the taxability of any portions of the settlement payments to any Eligible Collective Member, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiff. Neither Plaintiff's Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(4)    The Named Plaintiff and each Participating Collective Member agrees to defend and hold Releasees harmless, up to the amount of his or her Individual Settlement Amount (and Service Award, if applicable) resulting from the failure of the Named Plaintiff or any Participating Collective Member to pay taxes on any income he or she might receive as a participant in the settlement.

(5)    None of the amounts paid to any Eligible Class Member shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendants, including for purposes of any bonus of any kind.

## 4    RELEASE OF CLAIMS

**4.1**    Upon negotiating, signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the New York Subgroup will release Defendants and Releasees from all Released Claims for the New York Relevant Period.

**4.2**    Upon negotiating signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the California Subgroup will release Defendants and Releasees from all Released Claims for the California Relevant Period.

**4.3**    Upon negotiating signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the Multi-State Subgroup will release Defendants and Releasees from all Released Claims for the Multi-State Relevant Period.

**4.4**    Upon negotiating signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the Multi-State Subgroup who were employed

during the one (1) year period preceding August 28, 2019 shall release Defendants and Releasees from all Released Claims for the one (1) year period preceding August 28, 2019.

**4.5**   Any Eligible Collective Member who does not timely sign and cash a Settlement Check will not be bound by any release of claims.

## 5   PARTIES' AUTHORITY

**5.1**   The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 6   MUTUAL COOPERATION

**6.1**   The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7   NOTICES

**7.1**   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and addressed as follows:

To Plaintiff:
Gregg I. Shavitz
Camar R. Jones
Shavitz Law Group, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
(561) 447-8888
(561) 447-8831 (facsimile)
gshavitz@shavitzlaw.com
cjones@shavitzlaw.com

To Defendants:
Aaron N. Solomon
Taylor M. Ferris
Kaufman Dolowich & Voluck, LLP

135 Crossways Park Drive, Suite 201,
Woodbury, New York 11797
(516) 681-1100
(516) 681-1101 (facsimile)
asolomon@kdvlaw.com
tferris@kdvlaw.com

## 8    NO ADMISSION OF LIABILITY

8.1    By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiff, Eligible Collective Members, Participating Collective Members, and/or the Service Award Recipient, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation, and to fully resolve and settle all disputes with the Named Plaintiff, Eligible Collective Members, Participating Collective Members, and/or the Service Award Recipient. Settlement of the Action, negotiation, and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Named-Plaintiff in the Litigation; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, regulatory, governmental, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 9    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

9.1    Further Acts.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

9.2    No Assignment.  Plaintiff's Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

9.3    Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**9.4**    Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff, Participating Collective Members, and/or the Service Award Recipient, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**9.5**    Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.6**    Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.7**    Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.8**    Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**9.9**    Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**9.11**    Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**9.12**    Blue Penciling. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**9.13**    Facsimile, Electronic and Email Signatures. Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that

signature page via facsimile, email or other electronic means to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

9.14    Signatories.  This Agreement is valid and binding if signed by Defendants' authorized representative and any one of the Named Plaintiff.

**WE AGREE TO THESE TERMS.**

Dated: ~~May ___, 2022~~  June 2, 2022

IMOBILE, LLC

By: _Chetan krishna_____
1B3693A4D45D430...
    Chetan Krishna

Its:     President_____

Dated: ~~May ___, 2022~~  June 2, 2022

IMOBILE USA, LLC

By: _Chetan krishna_____
1B3693A4D45D430...
    Chetan Krishna

Its:     President_____

Dated:  May _5___, 2022

ANDREA SAMAYOA

_____

4819-2158-5150, v. 1

# Exhibit 1

## COURT-AUTHORIZED NOTICE OF LAWSUIT SETTLEMENT

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

### United States District Court for the Eastern District of New York
### *Samayoa, v. iMobile, LLC, et al., Case No. 1:22-cv-03389*

***PLEASE READ THIS NOTICE CAREFULLY.*** This notice relates to the settlement of a collective action litigation. It contains important information about your right to claim a payment from the settlement and about how to exclude yourself from the litigation.

You are receiving this notice because you were previously employed iMobile [insert all iMobile entities] as a salaried, exempt-classified Store Manager between August 29, 2019 and August 28, 2021, you may be entitled to money from a collective action settlement.

- Plaintiff, Andrea Samayoa, on behalf of herself and other similarly-situated employees who worked as salaried, exempt-classified store managers (singularly "SM" and in the plural "SMs") for iMobile, has a pending lawsuit in the United States District Court for the Eastern District of New York, located in New York, New York, entitled *Samayoa v. iMobile, LLC, et. al*., Case No. 1:22-cv-03389 (the "Lawsuit"). iMobile [and other entities] are the Defendants.

- In the lawsuit, Plaintiff, a former SM asserts that iMobile misclassified SMs as exempt from overtime under the Fair Labor Standards Act ("FLSA"), and applicable state laws and asserts the right to recover allegedly unpaid overtime wages and other statutory penalties under the FLSA and applicable state laws.  The SMs that Plaintiff seeks to represent are referred to as the "Eligible Collective Members."

- Plaintiff and Defendants have settled the matter and have entered into a Settlement Agreement and Release (the "Settlement Agreement"), which is explained in further detail below. Defendants have agreed to create a settlement fund (the "Settlement Fund") that will be used to pay Eligible Collective Members who qualify. Although Defendants agreed to settle, Defendants decided to do so solely to avoid the continued distraction of litigation. This settlement does not mean that Defendants did anything wrong or that they violated the law.  Defendants expressly deny that they did anything wrong and Defendants maintain that they fully complied with the FLSA, and applicable state wage and hour laws.  The Court has not decided who is right and who is wrong and, because there is a settlement, it never will decide who is right and who is wrong.

- Defendants have agreed to pay up to Six Hundred Forty Thousand Dollars ($640,000.00) (the "Gross Fund"), which includes: (a) Four Hundred Thousand Dollars ($400,000.00) to be distributed amongst you and the other Eligible Collective Members in accordance with the formula described in Paragraph 2; (b) Two Hundred Thousand Dollars ($200,000.00) for Plaintiffs' Counsel's attorneys' fees and costs of; (c) Thirty-Five Thousand Dollars ($35,000.00) for payment of settlement administration costs; and (d) Five Thousand Dollars ($5,000.00) for a service award to the Named Plaintiff.

- Under the allocation formula created by the settlement, you are entitled to receive $_____, half of which is subject to deductions for applicable taxes and withholdings.  If you were employed as a SM in California, you will receive an upward adjustment to your settlement share based on California's state law remedies and extended liability period looking back to August 29, 2017.  Additionally, if you were employed as a SM in New York, you will receive an upward adjustment to your settlement share based on New York's extended liability period looking back to August 29, 2015.  Furthermore, if you were employed as a SM outside of New York or California, and worked during the period of August 29, 2018 to August 28, 2019, you will receive an upward adjustment to your settlement share based upon a provision of the FLSA that may extend its statute of limitations by an additional year.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
| --- | --- |
| **DEPOSIT YOUR CHECK** | Your settlement check is enclosed.  You have until [90 days after check issuance date] to cash, deposit or otherwise negotiate the check ("Acceptance Period"). <br><br> If you cash, deposit, or otherwise negotiate your check during the 90 day Acceptance Period, you will release iMobile of your overtime misclassification wage and hour claims during the time you worked as a salaried, exempt-classified SM up through October 15, 2021, including FLSA claims and all state law wage and hour claims, including claims for liquidated damages, attorneys' fees, costs and expenses relating to the alleged violation. |
| **DO NOTHING** | If you do not timely cash, deposit or otherwise negotiate your check, you will not be entitled to a payment. You will not be deemed to have released any claim you may have under the FLSA or applicable state or local wage and hour laws. |

Counsel for Defendants'' ("Defendants' Counsel") do not make any representations concerning the tax consequences of your settlement payment. You are advised to seek your own personal tax advice prior to acting in response to this Notice.  If you cash, deposit, endorse, or negotiate your settlement check, you will indemnify and hold Defendants harmless up to the amount of your settlement payment, resulting from any failure by you to pay taxes on any income you might receive from participating in this settlement.

## QUESTIONS AND ANSWERS

### 1.  What is a collective action?

Plaintiff brought this lawsuit as a collective action on behalf of himself and other Collective Members. The law provides a way for multiple individuals, or one individual on behalf of others, to sue together for the same relief. For the FLSA claims, this is called a collective action.

### 2.  How was my payment calculated?

Your payment was based on a formula approved by the Court. This formula, after subtracting attorneys' fees, costs, and service awards, calculates the settlement payment for each Eligible Collective Member

based on the number of non-company holiday work weeks that you worked for iMobile as an exempt SM but excluding the work weeks between March 15, 2020 and September 30, 2020 (during which iMobile's stores operated at reduced capacity because of the coronavirus pandemic).  The amount of work weeks that will be used to calculate your share also depends on whether you worked in California, New York, or elsewhere.

**3.  Do I have a lawyer in this case?**

Plaintiff and the Eligible Collective Members are represented by Shavitz Law Group, P.A. You will not be charged for their services relating to the Lawsuit or the settlement.  You do not need to retain your own attorney in order to participate in the settlement.

**4.  How will the lawyers be paid?**

Plaintiffs' Counsel will apply to the Court for an award of $200,000.00 in attorneys' fees and reasonable costs and litigation expenses to compensate Plaintiffs' Counsel for investigating the facts, litigating the case, and negotiating the settlement.

**5.  How do I get more details about the settlement?**

The above is a summary of the basic terms of the settlement.  For the precise terms and conditions of the settlement, you may contact the Settlement Claims Administrator Toll-Free at 877-623-2703, or Plaintiff's counsel, Shavitz Law Group, P.A. at (561) 447-8888 or info@shavitzlaw.com.  You can also ask to see a copy of the Settlement Agreement.

**Please contact the Claims Administrator at 877-623-2703 if you have questions regarding this Notice. DO NOT CONTACT THE COURT REGARDING THIS SETTLEMENT.**

4851-3190-9117, v. 1

# Exhibit 2

## General Release Agreement

       This General Release Agreement dated the ___ day of _____, 2022, (the "Agreement") is made between Andrea Samayoa (hereinafter "Samayoa" or the "Named Plaintiff") and iMobile LLC iMobile USA, LLC (collectively referred to hereinafter as "iMobile" or "Defendants") (iMobile and Defendants are singularly, a "Party." Collectively, they are the "Parties") as follows:

       **WHEREAS,** Samayoa is the named plaintiff in an action against Defendants *captioned Samayoa v. iMobile, LLC, et. al.,* Case No. 1:22-cv-03389 pending in the United States District Court for the Eastern District of New York (the "Litigation");

       **WHEREAS**, iMobile, while continuing to deny any wrongdoing or liability, nevertheless has agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Arbitration. Nothing in this Agreement constitutes an admission of liability by iMobile with respect to any of the claims asserted in the Litigation; and

       **WHEREAS**, by executing this Agreement, Named Plaintiff warrants, acknowledges, and represents that Named Plaintiff has had the opportunity to review the Agreement, and has reviewed the Agreement, and further understands all of the terms of the Agreement; and

       **WHEREAS,** for the purposes of this Agreement, the term "Releasees" refers to iMobile LLC and iMobile USA, LLC, iMobile, iMobile of AZ LLC, iMobile of CA LLC, iMobile of CO LLC, iMobile of CT Operations LLC, iMobile of DE LLC, iMobile of IN LLC, iMobile of MA LLC, iMobile of MD LLC, iMobile of ME LLC, iMobile of MN LLC, iMobile of NH LLC, iMobile of NJ LLC, iMobile of NY LLC, iMobile of OH LLC, iMobile of PA LLC, iMobile of RI LLC, iMobile of TX LLC, iMobile of Virginia LLC, iMobile of WI LLC, iMobile USA of Illinois LLC, and iMobile USA of Iowa LLC as well as all of their current and former heirs, executors, owners, managers, parents, subsidiaries, successors, related companies, supervisors, employees, directors, administrators, officers, shareholders, accountants, attorneys, insurers and reinsurers, insurance carriers, and agents, as well as anyone employed by the Released Entities, or any person/entity who could deemed to be an "employer" of Named Plaintiff, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), creditors, insurers, reinsurers, sureties, predecessors, and successors of the foregoing, as well as the officers, managers, owners, employee benefit plan administrators, owners, shareholders, fiduciaries, trustees, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them, in their individual and/or representative capacities, parent companies, subsidiaries, related or affiliated companies, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such; and

       **NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, Named Plaintiff and iMobile agree as follows:

1.     **Service Award**. Named Plaintiff hereby understands and acknowledges that signing this Agreement, and not revoking his execution of same, is a condition precedent to receiving the Service Award in the amount of Five Thousand and 00/100 ($5,000.00) as outlined in Section 3.3(A) of the Settlement Agreement and Release ("Settlement Agreement") approved by the Court in the matter of *Samayoa v. iMobile, LLC, et. al.,* Case No. 1:22-cv-03389 pending in the United States District Court for the Eastern District of New York (the "Litigation").

2.     **General Release, Claims Not Released and Related Provisions**.

    a.     General Release of All Claims. In consideration of the payment to Named Plaintiff of the Court-approved service award provided under Section 3.3(A) of the Settlement Agreement, Named Plaintiff knowingly and voluntarily releases and forever discharges Releasees, of and from any and all claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising of any kind or nature, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, but not limited to, any and all claims asserted in the Litigation, any and all statutory, constitutional, tort, contractual or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the New York State Labor Law, and the Fair Labor Standards Act. For the avoidance of doubt, this release also includes, but is not limited to, all claims and/or causes of action arising under the following statutes and laws, both common and/or statutory:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Fair Labor Standards Act;
- The Genetic Information Nondiscrimination Act;
- The Equal Pay Act;
- The Sarbanes-Oxley Act retaliation provisions;
- The False Claims Act retaliation provisions;
- The Dodd-Frank Wall Street Reform and Consumer Protection Act retaliation provisions;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law, including, without limitation, breach of contract, breach of a covenant of good faith and fair

dealing, interference with business opportunity or contracts, negligence, misrepresentation, fraud, detrimental reliance, personal injury, assault, battery, defamation, false light, invasion of privacy, infliction of emotional distress, retaliation, constructive discharge, or wrongful discharge;

- any basis for recovering costs, fees, or other expenses, including attorneys' fees incurred in these matters

b. **Claims Not Released**.        Notwithstanding the foregoing, the Named Plaintiff is not waiving any rights he may have to (a) his/her own vested accrued employee benefits under iMobile's health, welfare or retirement benefits plans as of the date Employee signs this Release provided that such plans exist and to the extent that the Named Plaintiff has any accrued or vested employee benefits associated with his participation in same; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; and/or (c) pursue claims which by law cannot be waived by signing this Release.

c. **Governmental Agencies**.  The Named Plaintiff covenants and agrees not to commence any proceeding or litigation in any forum, administrative body, court, arbitration or otherwise, arising out of or relating to his employment with Defendants that has been released as part of this agreement. The Named Plaintiff will not file any administrative or judicial complaints, charges, lawsuits, claims, demands or actions of any kind against Releasees. In the event any such complaints, charges, lawsuits, claims, demands or actions are not withdrawn or are filed due to circumstances beyond the control of the Named Plaintiff, he promises and represents that he will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, charges, lawsuits, claims, demands or actions, and that the Named Plaintiff will execute such papers or documents as Releasees determine may be necessary to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice. The Parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding before any federal, state or local governmental agency. To the extent permitted by applicable law, the Named Plaintiff agrees that if any administrative claim, charge, or complaint is made, the Named Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

3. **No Re-Employment** Named Plaintiff acknowledges that his employment with Defendants has ended and that he has been paid in full for all time worked, paid correctly in accordance with all applicable wage and hour laws, and is owed no other forms of remuneration whatsoever, including, but not limited to, any wages, overtime compensation, vacation, bonus, tips, commission, or accrued benefit pay. Named Plaintiff further acknowledges and agrees that by entering into this Agreement, he voluntarily and knowingly waives any and all rights to re-employment with Defendants.  Named Plaintiff acknowledges that he shall not seek to become employed by Defendants in the future.

4. **Tax Indemnification** Named Plaintiff agrees to hold the Releasees harmless, and indemnify the Released Entities for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees as a result of Named Plaintiff's failure to pay or report any federal, state or local income or employment taxes with respect to the payments made pursuant to this Agreement.  Named Plaintiff further warrants that iMobile has not provided any advice or instruction whatsoever as to the taxation of any portion of

the service award.

**5.** **Sufficient Consideration** Named Plaintiff acknowledges that Named Plaintiff has received sufficient consideration as set forth in herein and referenced in the Agreement. Named Plaintiff expressly acknowledges that the release provisions herein, and also contained in the Agreement, shall be given full force and effect in accordance with each and all of the terms and provisions expressed herein and in the Agreement.

6.    **Non-Disparagement** Named Plaintiff agrees that he will not make any statement, written, oral or electronic, which in any way disparages iMobile, or any of iMobile's business practices. Named Plaintiff further agrees to take no action which is intended to harm iMobile, or its reputation. Notwithstanding the foregoing Named Plaintiff shall be entitled to make truthful statements about his employment with iMobile, and experience litigating the Litigation.

7.    **Medicare/Medicaid** Named Plaintiff affirms that Named Plaintiff is not a Medicare or Medicaid Beneficiary (defined as a claimant for whom Medicare has paid Conditional Payments for the treatment of injuries arising out of or related to any matter released by this Agreement) as of the date of this Agreement and no conditional payment has been made to or on Named Plaintiff's behalf by Medicare or Medicaid. Named Plaintiff further represents that Named Plaintiff is not enrolled in a Medicare or Medicaid program and was not enrolled at the time of Named Plaintiff's respective employment with Releasees or anytime thereafter through the date of this Agreement. Named Plaintiff further represents and warrants that no Medicaid or Medicare payments have been made to or on behalf of Named Plaintiff and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from Named Plaintiff's employment with any of the Releasees. Named Plaintiff further agrees that Named Plaintiff, and not Releasees, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted. In the event any action is commenced whereby any Releasee is pursued for payment in connection with the position of Named Plaintiff as a Medicare or Medicaid beneficiary, Named Plaintiff agrees to indemnify Releasees and hold Releasees harmless in full.

8.    **Enforcement** The Parties agree that, in any action arising from any alleged breach of the Agreement, in addition to any remedies available to the prevailing party in law or equity for a breach thereof, the prevailing party shall be entitled to receive from the breaching party reasonable attorneys' fees and costs, as well as the recovery of reasonable fees and costs incurred to make any fee application, and to enforce and/or collect any judgment obtained as a result of any breach.

9.    **Review of Agreement** Named Plaintiff warrants and represents that Named Plaintiff has reviewed the Agreement and the terms and conditions contained therein. Named Plaintiff acknowledges that by executing this Agreement, Named Plaintiff consents to each and every term and condition in the Agreement. Named Plaintiff further represents and acknowledges that Named Plaintiff has given Named Plaintiff's Counsel full authority to execute the Agreement on Named Plaintiff's behalf.

10. **Use of This Agreement** Except as set forth herein, this Agreement shall not be cited in any matter for any purpose against Releasees, their subsidiaries, predecessors, successors, assigns, and any of their respective officers, directors, employees, administrators, benefit plans, welfare plans, deferred compensation plans or long-term incentive plans, or as proof of liability of any sort. Under no circumstances shall this Agreement be cited as evidence in any proceeding against Releasees for any purpose, except as provided in paragraph 8 above.

11.    **Divestment of Claims and Indemnification** Named Plaintiff acknowledges that Named Plaintiff has not divested, hypothecated, or otherwise bargained away any interest in the purported claims or the Settlement Payment. Named Plaintiff further warrants or represents that there is no other person or entity that holds any remunerative interest in any of the claims asserted by Named Plaintiff, any interest in the Settlement Payment, or entitlement to any portion of the Settlement Payment. Named Plaintiff also warrants and represents that Named Plaintiff has not, in any way, bargained away the ability to enter into this Agreement without the assent of another person or entity. Named Plaintiff further warrants and represents that Named Plaintiff knows of no other persons or entities with standing to bring any claims against the Releasees that were or could have been asserted by Named Plaintiff on Named Plaintiff's own behalf. Notwithstanding the foregoing, Named Plaintiff shall protect, indemnify, and hold the Releasees harmless from and against all losses, costs (including attorneys' fees), liabilities, claims, damages and expenses of every kind and character, as incurred, resulting from or relating to or arising out of the payment of the service award asserted by: (a) a litigation funding lender (i.e. a lawsuit loan provider); (b) a bankruptcy trustee and/or creditor; (c) a judgment creditor; (d) a person to whom Named Plaintiff owes child support; and (e) a governmental agency. Named Plaintiff understands that the foregoing duty to protect, defend, indemnify, and hold Releasees harmless includes, but is not limited to, any claim by any of the foregoing persons and/or entities alleging entitlement to any portion of the service award. However, notwithstanding the foregoing, Named Plaintiff shall have no obligation to protect, defend, indemnify, and hold the Releasees harmless from any claim by any taxing authority for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against Releasees as a result of the Releasees failure to pay or report any federal, state or local income or employment taxes with respect to the payment of the service award.

12.    **No Admission of Wrongdoing**. By entering this Agreement, Releasees in no way admit any violation of law or any liability whatsoever to the Named Plaintiff, and all such liability being expressly denied. Releasees enter into this Agreement to avoid further protracted litigation, and to fully and finally resolve and settle all wage-related disputes with the Named Plaintiff. Settlement of Named Plaintiff's claims, negotiation, and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or this settlement: (1) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Releasees or of the truth of any of the factual allegations in any and all complaints or other papers filed by the Named Plaintiff in the Litigation; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Releasees in any civil, criminal, regulatory, governmental, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or

proceeding to approve, interpret, or enforce the terms of the Agreement.

13. **Miscellaneous Provisions**

a.    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

b.    This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles.

c.    No waiver, modification, or amendment of the terms of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

d.    This Agreement shall not be interpreted in favor or against either Party on account of such Party's counsel having drafted this Agreement

e.    If any provision of this Agreement is determined by a court of competent jurisdiction not to be enforceable in the manner set forth in this Agreement, the Parties agree that it is their intent that such provision should be enforceable to the maximum extent possible under applicable law and that such provision shall be reformed to make it enforceable in accordance with the intent of the parties. If any provisions of this Agreement are held to be invalid or unenforceable, such invalidation or unenforceability shall not affect the validity or enforceability of any other portion hereof.

f.    By signing this Agreement, the Respondent and the Named Plaintiff affirm that they know of no reason why their respective signatures would be ineffective in any way to bind them.

g.    This Agreement has been entered into without force or duress. The Parties' decision to enter into this Agreement is a fully informed decision and the Parties are aware of all legal and other ramifications of such decision and they further recognize that this Agreement is binding.

14. **Counterparts and Signatures** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. In addition, any scanned copies or facsimiled copies of this Agreement executed in any number of counterparts shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  All other notices and documents set forth herein shall be delivered to: counsel for iMobile, Aaron N. Solomon, Esq., Kaufman

Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797, (516) 681-1100, facsimile (516) 681-1101, asolomon@kdvlaw.com; and counsel for the Named Plaintiff, Camar R. Jones, Esq., Shavitz Law Group, P.A., 951 Yamato Road, Suite 285, Boca Raton, Florida 33431, (561) 447-8888, cjones@shavitzlaw.com.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO EXECUTE AND RETURN THIS RELEASE. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS RELEASE.**

**EMPLOYEE MAY REVOKE THIS RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS RELEASE.**

**ANY REVOCATION WITHIN THE 7-DAY REVOCATION PERIODS MUST BE SUBMITTED, IN WRITING, TO RUST CONSULTING, AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR GENERAL RELEASE." THE REVOCATION MUST BE DELIVERED TO COUNSEL FOR IMOBILE**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS RELEASE DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

**IN WITNESS WHEREOF**, the parties hereto knowingly and voluntarily executed this Release as of the date set forth below:

ANDREA SAMAYOA                                IMOBILE, LLC

_____                        By: _____

                                               Its: _____

Date: _____                       Date: _____


                                               IMOBILE USA, LLC

                                               By: _____

                                               Its: _____

                                               Date: _____