## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff, ANDREA SAMAYOA (the "Named Plaintiff"), individually and on behalf of all others similarly situated who comprise of the "Collective", and Defendants, IMOBILE LLC, and IMOBILE USA, LLC ("Defendants" or "iMobile") (singularly, a "Party") (Defendants together with Named Plaintiff, the "Parties").

## RECITALS

**WHEREAS**, Named Plaintiff filed a Collective Action Complaint against Defendants and a Consent to become a party in a collective action on or about DATE, in the United States District Court for the Eastern District of New York, which was assigned docket number DKT. NO. (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims as set forth in this Agreement, including all claims asserted in the Litigation and those claims that could have been so asserted under the Fair Labor Standards Act ("FLSA") or and/or under any other law, regulation, or ordinance regulating the payment of wages relating to the alleged non-payment of overtime to individuals employed as salaried, exempt-classified Store Managers ("SMs") at iMobile stores in the United States during the relevant periods, as defined below;

**WHEREAS**, solely for the purpose of settling the Action, and without admitting any wrongdoing or liability, Defendants have agreed, for settlement purposes only, to the conditional certification of a collective under §216(b) of the FLSA;

**WHEREAS**, Defendants, while continuing to deny any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or related in any way whatsoever to, the Litigation. Nothing in this agreement constitutes an admission of liability by Defendants with respect to any of the claims asserted in the Action;

**WHEREAS**, Plaintiff's Counsel analyzed and evaluated the merits of the claims made against iMobile and the impact of this Agreement on Named Plaintiff and Collective Action Members (collectively as the "Collective"), and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the collective members;

**WHEREAS,** solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendant has agreed, for settlement purposes only, to the conditional certification of a collective under §216(b) of the FLSA; and

**WHEREAS**, Named Plaintiff and Defendants, by and through their respective counsel, have engaged in extensive arms-length settlement discussions, and with the assistance of a

mutually-retained mediator, Martin Scheinman, Esq., in connection with the potential resolution of the Litigation. The Parties — subject to the approval of the Court — have elected to settle the Litigation pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1. DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "**Acceptance Period**" means the ninety (90)-day period from the date of issuance of the Settlement Checks to Eligible Collective Members during which they may sign and deposit, cash or otherwise negotiate the Settlement Check to become a Participating Collective Member.

1.2 "**Agreement**" means this Settlement Agreement and Release.

1.3 "**Approval Order**" means the Order entered by the Court approving the terms and conditions of this Agreement, certifying a collective action pursuant to § 216(b) of the FLSA for settlement purposes only, authorizing distribution of the settlement payments as provided for in this Agreement, approving the professional fees, expenses and costs, and dismissing the Litigation with prejudice.

1.4 "**California Subgroup**" means Eligible Collective Members who were employed by iMobile in the State of California during the four (4) year period preceding August 28, 2021.

1.5 "**California Relevant Period**" means the four (4) year period preceding August 28, 2021.

1.6 "**Complaint**" means the Complaint [D.E. 1] dated XXXX filed by Named Plaintiff in this Litigation.

1.7 "**Costs and Fees**" means Plaintiff's Counsel's Court-approved attorneys' fees, costs, and expenses.

1.8 "**Court**" means the United States District Court for the Eastern District of New York.

1.9 "**Defendants**" or "**iMobile**" means iMobile, LLC and iMobile USA, LLC.

1.10 "**Defendants' Counsel**" means Kaufman Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797.

1.11 **"Effective Date"** Provided no appeal is timely filed, and no application has been made for reconsideration or rehearing, the "Effective Date" means thirty (30) days after the Court has entered the Approval Order. If such an appeal or application for reconsideration or rehearing is timely filed, the latest of the following, if applicable, becomes the Effective Date: (1) any appeal from the Approval Order has been finally dismissed; (2) the Approval Order has been affirmed on appeal in a form substantially identical to the form of the Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Approval Order has expired and no such petition for review has been filed; and/or (4) if a petition for review of an appellate decision affirming the Approval Order is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Approval Order in a form entered by the Court.

1.12 **"Eligible Collective Member"** means the members of the Multi-State Subgroup, New York Subgroup and California Subgroup, as defined herein.

1.13 **"Eligible Work Week"** means any non-company holiday weeks each Eligible Collective Member was employed by iMobile as a salaried, exempt-classified SM during the Relevant Period, *excluding* the weeks between March 15, 2020 and September 30, 2020, when iMobile's store operations were impacted by the COVID-19 pandemic.

1.14 **"Employer Payroll Taxes"** means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.15 **"Gross Fund"** means Six Hundred Forty Thousand and 00/100 Dollars ($640,000.00), which is the maximum amount that iMobile has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to the Eligible Collective Members; the costs of the Settlement Administrator; and any Court-approved Service Award to the Named Plaintiff. The Gross Fund does not include the Employer Payroll Taxes, which will be paid separately by iMobile.

1.16 **"Last Known Address"** or **"Last Known Addresses"** means the most recently recorded personal mailing address for an Eligible Collective Member as shown in Defendants' records.

1.17 **"Litigation"** or the **"Action"** means the lawsuit *entitled Samayoa* v. *iMobile, LLC, et. al.,* No. XXXXXXX in the United States District Court for the Eastern District of New York.

1.18 **"Mediator"** Mediator shall mean Martin F. Scheinman, Esq.

1.19 **"Multi-State Relevant Period"** means the two (2) year period preceding August 28, 2021.

1.20 &ldquo;**Multi-State Subgroup**&rdquo; means all Eligible Collective Members who were employed by iMobile in the states of Ohio, Arizona, Wisconsin, Indiana, Minnesota, Texas, Connecticut, West Virginia, Colorado, Delaware, Massachusetts, Maryland, New Jersey, Pennsylvania, Iowa, Virginia, Maine, New Hampshire, and Illinois during the two (2) year period preceding August 28, 2021.

1.21 &ldquo;**Named Plaintiff**&rdquo; means Andrea Samayoa.

1.22 &ldquo;**Net Fund**&rdquo; means the remainder of the Gross Fund after deductions, payments, or allocations for: (a) Court-approved attorneys&rsquo; fees and costs for Plaintiff&rsquo;s Counsel; (b) any Court-approved Service Awards; and (c) the cost of the Settlement Administrator.

1.23 &ldquo;**New York Relevant Period**&rdquo; means the six (6) year period preceding August 28, 2021.

1.24 &ldquo;**New York Subgroup**&rdquo; means Eligible Collective Members who were employed in the State of New York during the six (6) year period preceding August 28, 2021.

1.25 &ldquo;**Participating Collective Members**&rdquo; means each Eligible Collective Member who timely signs, endorses, cashes, deposits, or otherwise negotiates a Settlement Check.

1.26 &ldquo;**Parties**&rdquo; collectively means the Named Plaintiff and Defendants.

1.27 &ldquo;**Plaintiff's Counsel**&rdquo; means Shavitz Law Group, P.A., 951 Yamato Road, Suite 285, Boca Raton, Florida 33431.

1.28 &ldquo;**Qualified Settlement Fund**&rdquo; or &ldquo;**QSF**&rdquo; means the non-interest-bearing bank account controlled by an authorized Settlement Administrator for the purpose of distributing the Gross Fund in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Approval Order, as well as any other or further Orders of the Court.

&ldquo;**Releasees**&rdquo; or &ldquo;**iMobile**&rdquo; means iMobile LLC and iMobile USA, LLC, iMobile, iMobile of AZ LLC, iMobile of CA LLC, iMobile of CO LLC, iMobile of CT Operations LLC, iMobile of DE LLC, iMobile of IN LLC, iMobile of MA LLC, iMobile of MD LLC, iMobile of ME LLC, iMobile of MN LLC, iMobile of NH LLC, iMobile of NJ LLC, iMobile of NY LLC, iMobile of OH LLC, iMobile of PA LLC, iMobile of RI LLC, iMobile of TX LLC, iMobile of Virginia LLC, iMobile of WI LLC, iMobile USA of Illinois LLC, and iMobile USA of Iowa LLC as well as all of their current and former heirs, executors, owners, managers, parents, subsidiaries, successors, supervisors, employees, directors, administrators, officers, shareholders, accountants, attorneys, insurers and reinsurers, insurance carriers, and agents, as well as anyone employed by the Released Entities, or any person/entity who could deemed to be an &ldquo;employer&rdquo; of any member of the Settlement Collective, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), creditors, insurers, reinsurers, sureties, predecessors, and successors of the

foregoing, as well as the officers, managers, owners, employee benefit plan administrators, owners, shareholders, fiduciaries, trustees, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them, in their individual and/or representative capacities, parent companies, subsidiaries, related or affiliated companies, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such.

1.29   **"Released Claims"** means any and all known and unknown claims, complaints, causes of action, lawsuits, demands, back-wages, benefits, attorneys' fees, pain and suffering, debts, controversies, damages, judgments, in law or equity, of any kind, nature arising under the Fair Labor Standards Act, the New York Labor Law, the California Labor Code, the Pennsylvania Minimum Wage Act, and/or any other law, regulation, or ordinance regulating the payment of wages, including but not limited to, all claims set forth in the Litigation, all claims of unpaid compensation, unpaid minimum wage, unpaid overtime, unpaid commissions, unpaid bonuses, unpaid final wages, unpaid meal break compensation, unpaid rest break compensation, unpaid tips, improper deductions, unpaid spread of hours, unpaid fringe benefits (including any vacation, paid time off, and sick pay), unpaid accrued benefit time, liquidated damages, and statutory penalties (including, but not limited to, all damages or penalties due to improper wage notices, improper wage statements, and/or timely payment provisions) during the time a Participating Collective Member was employed by Releasees as a salaried, exempt-classified Store Manager up until October 15, 2021.

1.30   **"Service Award Released Claims"** means any and all claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising of any kind or nature, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, tort, contractual or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the New York State Labor Law, and the Fair Labor Standards Act.

1.31   **"Store Manager"** or **"SM"** means those persons employed by iMobile as salaried, exempt-classified SMs in the United States during the relevant periods.

1.32   **"Settlement Administrator"** shall mean Arden Claims, LLC.

1.33   **"Settlement Administrator's Fee"** means the Settlement Claims Administrator's professional service fees and costs.

1.34 **"Settlement Agreement"** or **"Agreement"** means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.35 **"Settlement Checks"** means the checks issued to each Eligible Collective Member for their proportionate share of the Net Fund (less lawful deductions and withholdings pursuant to Section 3.4(C)(2) of this Agreement) calculated in accordance with this Agreement. As well, in the case of the Named Plaintiff, the term Settlement Checks includes a separate check for the payment of the Service Award.

1.36 **"Settlement Data"** means the payroll data produced to Plaintiff's Counsel which served as the basis for Plaintiff's Counsel's estimation of the damages for the Eligible Collective Members and the financial terms of the Settlement.

1.37 **"Settlement Notice" or "Notice"** means the document entitled Notice of Settlement to be approved by the Court in a form substantially similar to the Notice attached hereto as **Exhibit X**.

2. **APPROVAL AND NOTICE TO PLAINTIFFS**

   2.1 Binding Agreement. This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

   2.2 Settlement Administrator.

       2.3.1 Retention. The Parties hereby designate Arden Claims, LLC ("Arden") to act as Settlement Claims Administrator. The Parties agree to formally engage Arden to administer this settlement.

       2.3.2 Responsibilities of Settlement Administrator. The Settlement Administrator shall be responsible for: (i) preparing, printing and disseminating to Eligible Collective Members the Notice; (ii) performing a skip trace and resending, within three (3) days of receipt, any Notice Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number for the purpose of responding to inquiries made by Eligible Collective Members until 180 days after the Effective Date; (v) promptly furnishing to counsel for the Parties copies of any written or electronic communications from the Eligible Collective members (vi) referring to Plaintiff's Counsel all inquiries by Eligible Collective Members regarding matters not within the Settlement Administrator's duties specified herein; (vi) responding to inquiries of counsel for the Parties relating to the Settlement Administrator's duties specified herein; (vii) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (viii) maintaining adequate records of its activities, including the dates of the mailing of Notices, returned mail and any and all other actual or attempted written or electronic communications with Eligible Collective Members; (ix) confirming in writing to counsel for the Parties

and the Court its completion of the administration of the claims process; (x) timely responding to communications from the Parties and their counsel; (xii) calculating and paying each Eligible Collective Member's taxes; (xi) preparing and providing Defendants with the Eligible Collective Member's IRS W-9 and W-4 tax forms; (xiii) mailing all required tax forms to Eligible Collective Members and Plaintiff's Counsel as provided herein; (xiv) setting up a Qualified Settlement Fund to be used for the distribution of: a) all Settlement Checks to Eligible Collective Members; b) the Court-approved costs and fees to the Plaintiff's Counsel; c) the Court-approved fees of the Settlement Claims Administrator; and d) the Court-Approved Service Award to the Named Plaintiff; (xv) calculating the amount of each Eligible Collective Member's Individual Settlement Amount; and (xvi) such other tasks as the Parties mutually agree or which the Court in the Litigation is pending directs.

**2.3.3** Access to the Settlement Administrator. The Parties will have equal access to the Settlement Administrator. Plaintiff's Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Administrator and provide reasonable assistance in administering the terms of this Agreement.

**2.4** Plaintiff's Counsel shall file a motion for approval of this Settlement Agreement ("Approval Motion"). With the Approval Motion, Plaintiff's Counsel also will file the Settlement Agreement and all exhibits thereto. Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable and dismissing the Litigation with prejudice; (b) certifying a collective action pursuant to § 216(b) of the FLSA for settlement purposes only; and (c) approving the proposed Settlement Notice to be sent to the Eligible Collective Members, and the Notice process.

**2.5** iMobile will fund the QSF *via* wire transfer as follows:

**2.5.1** Within fourteen (14) days of the Effective Date, iMobile shall deposit the sum of $40,000.00 into the QSF. The Settlement Administrator's expenses and the Service Award will paid from this payment.

**2.5.2** Within thirty (30) days of the Effective Date, iMobile shall deposit the sum of $203,482.18 into the QSF to pay the claims of the California Sub-Group Members.

**2.5.3** Within Seventy-Five (75) days of the Effective Date, iMobile shall deposit the sum of $94,078.76 into the QSF to pay the claims of the New York Sub-Group Members.

**2.5.4** Within ninety (90) days of the Effective Date, iMobile shall deposit the sum of $69,906.40 into the QSF to pay the claims of the Multi-State Sub-Group Members who were employed in Colorado, Delaware, Massachusetts, Maryland, New Jersey, Pennsylvania, Illinois, Iowa, Virginia, Maine, and New Hampshire.

**2.5.5**   Within one hundred ten (110) days of the Effective Date, iMobile shall deposit the sum of $32,532.67 into the QSF to pay the claims of Multi-State Sub-Group Members employed in Ohio, Arizona, Wisconsin, Indiana, Minnesota, Texas, Connecticut, and West Virginia.

**2.5.6**   Within one hundred thirty (130) days of the Effective Date, shall deposit the sum of $200,000 into QSF to pay Plaintiff's Counsel's attorneys' fees and costs.

**2.5.7**   Reverted funds from uncashed Settlement Checks may be used to satisfy any of the payments above in this Section 2.5.

**2.6**   Within seven (7) days after the Effective Date, iMobile shall send to the Settlement Administrator an excel spreadsheet containing the following information for the Eligible Collective Members: names, last known mailing addresses, last known email addresses, social security numbers, and dates of employment as salaried, exempt-classified SMs.

**2.7**   Settlement Notices and Settlement Checks will be mailed, *via* First Class U.S. mail, postage prepaid, to Eligible Collective Members. The Notice will also be sent to the Eligible Collective Members *via* e-mail. The Settlement Notices and Settlement Checks will be distributed based on the following schedule:

**2.7.1**   Within thirty-seven (37) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the California Sub-Group Members.

**2.7.2**   Within Eighty-Three (82) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the New York Sub-Group Members.

**2.7.3**   Within ninety-seven (97) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the Multi-State Sub-Group Members who were employed in Colorado, Delaware, Massachusetts, Maryland, New Jersey, Pennsylvania, Illinois, Iowa, Virginia, Maine, and New Hampshire.

**2.7.4**   Within one hundred seventeen (117) days of the Effective Date, the Settlement Administrator shall mail Settlement Checks and the Notice to the Multi-State Sub-Group Members employed in Ohio, Arizona, Wisconsin, Indiana, Minnesota, Texas, Connecticut, and West Virginia.

**2.8**   The Notice will advise the Eligible Collective Members of the Settlement and will explain how their settlement share was determined. The Notice will also advise Eligible Collective Members that by endorsing, negotiating, signing, cashing, or depositing the settlement check, they will provide Releasees with a release of their claims arising under the FLSA and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages during the time they worked as salaried, exempt-classified Store Managers up to October 15, 2021.

2.9 Settlement Checks issued pursuant to this Agreement shall expire ninety (90) days following their issuance ("Acceptance Period"). In the event a Plaintiff reports a lost or destroyed Settlement Check within the Acceptance Period, the Settlement Administrator shall issue a stop payment order on the original check and issue a new check within seven (7) days of notification of the check being lost or destroyed. The reissued check shall be valid for the longer of forty-five (45) days from the date the check is re-mailed, or the remainder of the Acceptance Period.

2.10 All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

"**RELEASE OF CLAIMS:**

By negotiating, signing, cashing, endorsing and/or depositing this check, I consent to join the Litigation entitled *Samayoa* v. *iMobile, LLC, et. al.* and I hereby release Defendants and Releasees from any and all wage and hour claims under the Fair Labor Standards Act and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages including such claims brought or which could have been brought in the Litigation for the period of time I was employed as a salaried, exempt-classified Store Manager up until October 15, 2021."

2.11 Any Notice Packets returned undeliverable shall be skip-traced one (1) time within three (3) days of receipt of returned Notice to obtain a new address and be re-mailed by First Class U.S. Mail along with the settlement check. The Eligible Collective Member shall have the longer of forty-five (45) days from the date the check is re-mailed, or the remainder of the Acceptance Period to negotiate the settlement check.

2.12 Plaintiff's Counsel and Defendants' Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process. The Settlement Administrator will periodically update Plaintiff's Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

2.13 Retention/Filing of Copies of Settlement Checks. The Settlement Administrator shall on a weekly basis compile and transmit to Defendants' Counsel and Plaintiff's Counsel statistics on the number of Eligible Collective Members who have signed and cashed Settlement Checks. At the end of the Acceptance Period, the Settlement Administrator shall provide to Plaintiff's Counsel and Defendants' Counsel copies of signed and cashed checks.

2.14 Effect of Court Failure to Approve Settlement. In the event that the Court fails to approve the Settlement, the Parties: (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the

Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted, except that both parties agree to work cooperatively and to petition the court for additional time such that neither party is prejudiced by the delay caused by the parties' settlement efforts.

**3    SETTLEMENT TERMS**

    **3.1    Settlement Payments.**

(A)    Defendants agree to pay up to a maximum gross amount of Six Hundred Forty Thousand and 00/100 Dollars ($640,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Collective Members, any Court-approved Service Award, and the Settlement Administrator's costs, and Plaintiff's Counsel's attorneys' fees and costs. Defendants will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B)    Any funds that remain unclaimed by Eligible Collective Members who do not timely sign and cash their Settlement Checks before the end of the Acceptance Period shall revert to iMobile.

    **3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    In their Approval Motion, Plaintiff's Counsel shall ask the Court to approve payment of Two Hundred Thousand and 00/100 Dollars ($200,000.00) as an award of Costs and Fees. This amount shall constitute full satisfaction of any claim for attorneys' fees and costs.

(B)    The settlement is not conditioned on the Court's approval of Plaintiff's Counsel's petition for fees, costs and expenses. The outcome of any proceeding related to Plaintiff's Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees and costs that are not approved by the Court shall remain part of the Net Fund.

(C)    Within one hundred thirty-seven (150) days of the Effective Date, the Settlement Administrator shall wire to Plaintiff's Counsel the amount of Costs and Fees that have been approved by the Court.

(D)    All funds remaining in the QSF after the above payments are made, and after the last of the re-issued Settlement Checks expire, shall be returned to iMobile.

    **3.3    Service Award to Named Plaintiff.**

(A)     In their Approval Motion, Named Plaintiff will apply to the Court to receive a Service Award from the Gross Fund in the amount of Five Thousand and 00/100 ($5,000.00).

(B)     The Service Award and any requirements for obtaining any such payment are separate and apart from, and in addition to, the Named Plaintiff's recovery from the Net Fund. The settlement is not conditioned on the Court's approval of the Service Award. The substance of the Named Plaintiff's application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. Any Service Award approved by the Court shall be deemed non-wage compensation in its entirety and shall be reported to the IRS on a Form 1099. The Named Plaintiff shall provide Releasees with a release of the Service Award Recipient Released Claims in the form annexed hereto as **Exhibit** \_\_\_\_. The Named Plaintiff must execute this release to obtain the Service Award. Any Service Award money not approved by the Court shall remain part of the Net Fund.

(C)     Within twenty-one (21) days of the Effective Date, the Settlement Administrator shall issue the Service Award to the Named Plaintiff.

**3.4**     **Calculation of Eligible Collective Members' Payments.**

(A)     The allocation to each Eligible Collective Member for their Settlement Checks will be made from the Net Fund. The estimated proportionate share of the Net Fund for each Eligible Collective Member will be determined pursuant to the following formula:

      1.    Calculate the Net Fund by deducting the Costs and Fees, claims administration costs, and Service Awards from the total Gross Fund.

      2.    Calculate the number of each Eligible Collective Member's Eligible Work Weeks.

      3.    Credit Eligible Collective Members in the Multi-state Subgroup one (1) point for each Eligible Work Week worked during the Multi-State Relevant Period. Additionally, to the extent that any such Multi-State Subgroup Member was employed during the one-year period preceding August 28, 2019, such individual will be credited .5 point for each of their Eligible Work Weeks worked during that 1-year period preceding August 28, 2019.

    4. Credit Eligible Collective Members in the New York Subgroup one (1) point for each Eligible Work Week worked during the six-year period preceding August 28, 2021.

    5. Credit Eligible Collective Members in the California Subgroup three (3) points for each Eligible Week worked during the four (4)-year period preceding August 28, 2021.

(B) To calculate each Eligible Collective Member's Individual Settlement Amount:

    1. Add the value of all points for the Eligible Collective Members together to obtain the "Total Denominator;"

    2. Divide the number of points for each Eligible Collective Member by the Total Denominator to obtain each Eligible Collective Member's allocated percentage of the Net Fund; and

    3. Multiply each Eligible Collective Member's Percentage of the Net Fund against the Net Fund to determine each Eligible Collective Member's Individual Settlement Amount.

    4. The sum of the Eligible Collective Members' Individual Settlement Amounts shall equal the Net Fund.

(C) Tax Characterization of Payments.

  (1) For tax purposes, 50% of the payment of an Eligible Collective Member's Individual Settlement Amount shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

  (2) Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and for Participating Collective Members only shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without withholding and for Participating Collective Members only shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099. The Defendants shall be responsible for calculating payroll tax and withholding, issuing the Settlement Checks and Service Awards and, for Participating Collective Members, issuing IRS Form W-2

          and Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and for which an IRS Form 1099 will be issued to Shavitz Law Group, P.A. Any Service Award pursuant to Section 3.3 shall be deemed non-wage compensation in its entirety for which an IRS Form 1099 will be issued to the Named Plaintiff.

    (3)    The employee portion of all applicable income and payroll taxes will be the sole responsibility of the Participating Collective Member receiving and negotiating the Settlement Check. iMobile makes no representations, and it is understood and agreed that iMobile has made no representations, as to the taxability of any portions of the settlement payments to any Eligible Collective Member, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiff. Neither Plaintiff's Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

    (4)    The Named Plaintiff and each Participating Collective Member agrees to defend and hold Releasees harmless, up to the amount of his or her Individual Settlement Amount (and Service Award, if applicable) resulting from the failure of the Named Plaintiff or any Participating Collective Member to pay taxes on any income he or she might receive as a participant in the settlement.

    (5)    None of the amounts paid to any Eligible Class Member shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendants, including for purposes of any bonus of any kind.

**4**    **RELEASE OF CLAIMS**

    **4.1**    Upon negotiating, signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the New York Subgroup will release Defendants and Releasees from all Released Claims for the New York Relevant Period.

    **4.2**    Upon negotiating signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the California Subgroup will release Defendants and Releasees from all Released Claims for the California Relevant Period.

    **4.3**    Upon negotiating signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the Multi-State Subgroup will release Defendants and Releasees from all Released Claims for the Multi-State Relevant Period.

    **4.4**    Upon negotiating signing, cashing, endorsing and/or depositing their settlement checks, the Participating Collective Members in the Multi-State Subgroup who were employed

during the one (1) year period preceding August 28, 2019 shall release Defendants and Releasees from all Released Claims for the one (1) year period preceding August 28, 2019.

**4.5** Any Eligible Collective Member who does not timely sign and cash a Settlement Check will not be bound by any release of claims.

## 5 PARTIES' AUTHORITY

**5.1** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 6 MUTUAL COOPERATION

**6.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7 NOTICES

**7.1** Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and addressed as follows:

To Plaintiff:
Gregg I. Shavitz
Camar R. Jones
Shavitz Law Group, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
(561) 447-8888
(561) 447-8831 (facsimile)
gshavitz@shavitzlaw.com
cjones@shavitzlaw.com

To Defendants:
Aaron N. Solomon
Taylor M. Ferris
Kaufman Dolowich & Voluck, LLP

    135 Crossways Park Drive, Suite 201,
    Woodbury, New York 11797
    (516) 681-1100
    (516) 681-1101 (facsimile)
    asolomon@kdvlaw.com
    tferris@kdvlaw.com

**8**     **NO ADMISSION OF LIABILITY**

    **8.1**     By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiff, Eligible Collective Members, Participating Collective Members, and/or the Service Award Recipient, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation, and to fully resolve and settle all disputes with the Named Plaintiff, Eligible Collective Members, Participating Collective Members, and/or the Service Award Recipient. Settlement of the Action, negotiation, and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Named-Plaintiff in the Litigation; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, regulatory, governmental, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**9**     **INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

    **9.1**     Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

    **9.2**     No Assignment. Plaintiff's Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

    **9.3**     Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

9.4      Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff, Participating Collective Members, and/or the Service Award Recipient, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

9.5      Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

9.6      Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

9.7      Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

9.8      Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

9.9      Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

9.11      Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

9.12      Blue Penciling. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

9.13      Facsimile, Electronic and Email Signatures. Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that

signature page via facsimile, email or other electronic means to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**9.14** Signatories. This Agreement is valid and binding if signed by Defendants' authorized representative and any one of the Named Plaintiff.

**WE AGREE TO THESE TERMS.**

Dated: ~~May ___, 2022~~ June 2, 2022        IMOBILE, LLC

By: _Chetan Krishna_
    Chetan Krishna
Its: President

Dated: ~~May ___, 2022~~ June 2, 2022        IMOBILE USA, LLC

By: _Chetan Krishna_
    Chetan Krishna
Its: President

Dated: May 5, 2022        ANDREA SAMAYOA

_/s/ signature_

4819-2158-5150, v. 1

Page **17** of **17**