UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANDREA SAMAYOA, individually and on
behalf of all others similarly situated,

                              Plaintiffs,

-against-                             **MEMORANDUM AND ORDER**
                                               22-CV-03389 (AYS)

iMOBILE AND iMOBILE USA, LLC

                              Defendants.
----------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Plaintiff Andrea Samayoa commenced this case pursuant to the Fair Labor Standards Act (the "FLSA") seeking to represent a national collective of store managers seeking overtime backpay from Defendants' iMobile and iMobile USA, LLC (collectively "iMobile" or "Defendants"). See generally Complaint ("Compl."), Docket Entry ("DE") [1]. After a hastily reached (but subsequently approved) settlement Defendants defaulted in payment of the majority of the amounts they agreed to pay. The case is now closed and judgment has been entered against the defaulting Defendants.

       Presently before the Court is Plaintiffs' motion for the imposition of sanctions pursuant to 28 U.S.C. § 1927 ("Section "1927") and the Court's inherent authority. Sanctions are sought only against defense counsel, Kaufman, Dolowich & Voluck, LLP ("KDV"), and not their client. For the reasons that follow, the motion is denied.

BACKGROUND

I.      Proceedings From Commencement of the Action to Settlement Approval

       As noted, this action was commenced pursuant to the FLSA. Entries on the docket

1

indicate that this matter was likely settled before it was even commenced. Thus, the action was commenced on June 8, 2022 and on July 25, 2022, Plaintiff filed her motion for settlement approval pursuant to Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015). The settlement agreement (the "Agreement") established a fund of $640,000 to compensate nationwide class members and their attorneys with payments made over a period of 130 days. See DE [6].

On June 17, 2022 (prior to the filing of the Cheeks motion) this Court entered an order scheduling an initial conference to be held on October 4, 2022. See Order dated June 17, 2022 (the "June 17 Order"). The June 17 Order was entered in accord with this Court's routine practice of scheduling a prompt initial conference that allows time for the complaint to be answered. It also takes into account a reasonable period of time for the parties to confer and become familiar with the rules of the Eastern District of New York as well as those of the District Court and this Court, with an eye toward compliance therewith in preparation for the initial conference. See DE [5] (scheduling initial conference and providing links to rules of this Court, which include particular motion practice and discovery rules and protocols concerning cases brought pursuant to the FLSA).

As referred to above, on July 25, 2022 - after the scheduling of the initial conference (but before it was held) and before the filing of an answer or a notice of appearance by defense counsel, Plaintiffs filed their Cheeks motion. On the next day the District Court referred the Cheeks motion to this Court for Report and Recommendation, and for management of this case in accord with its individual rules. See Order of District Court dated July 26, 2022. The District Court's reference to this Court's case

management was likely in recognition of the prior scheduling of the initial conference and meant to give the parties an opportunity to have the Cheeks hearing held in the most efficient manner. Shortly thereafter, Plaintiffs filed a motion to strike their original motion for settlement approval and to file an amended motion for Cheeks approval. DE [9], [10], [11] and [12]. The motion to strike was prompted by Plaintiff's recognition that her earlier filed memorandum of law did not comply with the rules of either this Court or those of the District Court with respect to inclusion of a table of contents and authorities. In all candor, had the Plaintiffs contacted this court after the District Court's referral of the Cheeks motion, this Court would certainly have excused their failure to include a table of contents and authorities and would have acted to move the case forward expeditiously. However, Plaintiff chose a more circuitous route.

       Thus, on August 26, 2022, one month later after the District Court's referral of the Cheeks motion, Plaintiffs filed a letter addressed to the District Court advising that the parties did not agree to have this Court exercise jurisdiction over the Cheeks motion and asking the District Court to schedule a Cheeks hearing. DE [13]. Upon review of that letter and in apparent recognition of the fact that Plaintiffs did not understand its prior order, the District Court entered an order explaining that its order of July 26, 2022 did not request the parties' opinion as to whether they wished to consent to the jurisdiction of this Court. Instead, it was a proper referral of the Cheeks motion to this Court for Report and Recommendation and for case management. By way of further explanation the District Court referred the parties to relevant portions of the Federal Rules of Civil Procedure, the Local Rules of this Court and relevant statutory authority. The parties were therefore advised of what a clear reading and understanding of the docket and applicable law

3

should have made apparent, i.e., that the District Court properly exercised its discretion to refer the Cheeks motion to this Court for Report and Recommendation. DE [13]. Instead of reading the order of the District Court and promptly referring to this Court's case management rules in order to schedule a Cheeks hearing, Plaintiffs (and possibly Defendants - who had not yet made an appearance in this case) wasted time by responding to a District Court order that did not exist. Had the parties wished to expedite the proceedings they could have contacted this Court promptly after the July 26, 2022 referral and asked to schedule an early Cheeks hearing. They did not. Instead, they spent a month in apparent discussions as to whether they wished to consent to Magistrate Judge jurisdiction.

Shortly after entry of the District Court's August 29, 2022 order this Court entered an order dated September 19, 2022 directing that the parties and counsel appear before this Court for a Cheeks hearing to be held on October 24, 2022. See Order dated September 19, 2022. Thus, in effect, the initial conference was converted to a Cheeks hearing to take place approximately three weeks after the initial conference would have taken place in the usual order of proceedings. An in-person Cheeks hearing was scheduled as the most efficient use of this Court's time to render a decision on a Cheeks motion. This was especially true here, where in the absence of the parties' consent to Magistrate Judge jurisdiction, entry of a final order would be delayed because any order of this Court would necessarily require District Court review prior to entry. Moreover, an in-person hearing was scheduled because Defendants had yet to appear by counsel and the Court was wary of the bona fide nature of the purported settlement. While the Agreement was fully executed, the failure of defense counsel to have yet appeared in the

4

case necessitated a closer look.

After the September 19, 2022 scheduling of the Cheeks hearing, Plaintiff's counsel Gregg Shavitz, Esq. ("Shavitz") contacted KDV attorneys Aaron Solomon, Esq. ("Solomon") and Michael Kaufman, Esq. ("Kaufman") regarding filing a notice of appearance. Shavitz's text was ignored, and KDV did not file their Notice of Appearance until after this Court's October 17, 2022, order with respect to that appearance of KDV. See Order dated 10/17/2022; see also Declaration of Gregg Shavitz, Esq. in Support of Motion for Sanctions and Request for Discovery ("Shavitz Decl."), DE [60], ¶ 4; Plaintiff's Memorandum of Law in Support of Motion for Sanctions and Request for Discovery ("Plts.'s Memo"), DE [59], 2.[1] Ultimately, Defense counsel appeared and on October 31, 2022, this Court approved the Agreement. See Order dated 10/31/2022. In an ordinary case, this would have ended the litigation. Here, however, while Defendant paid an initial $40,000 into the settlement fund, Defendants failed to make any further payments. Post-settlement approval litigation and animosities ensued.

II.     Post-Approval Procedures and the Present Motion

Email correspondence between Solomon and Shavitz from December 7, 2022 – December 9, 2022 indicate tensions among counsel. iMobile missed its December 7, 2022 deadline to provide class information data to Plaintiff. On December 9, 2022, Shavitz contacted Solomon, inquiring whether iMobile would provide the class data that

---

[1] It should be noted that Defendant could certainly have declined to appear, requested more time, or taken any action in furtherance of their clients' interests. While this Court's October 17, 2022 order was a "direction" with respect to an appearance, it is inaccurate to characterize the order to reflect that the Court took any part in enforcement of parties' agreement that Defendant appear in the action and move forward with the settlement. Instead, it was an order directing the Defendant to appear, if that was their intent, by a date certain.

same day. Solomon responded, "if you say please." Declaration of Aaron N. Solomon in Opposition to Plaintiff's Motion for Sanctions ("Solomon Decl."), Exhibit F, DE [63-6]. Shavitz notes that Solomon's response was inappropriately cavalier. Id. In connection with this motion Solomon maintains that his comment was taken out of context.

On December 19, 2022, Plaintiff moved for a pre-motion conference regarding Defendants 'failure to fund the settlement. DE [32]. This Court granted the motion, directing Defendants 'principal to appear in-person on January 18, 2023. See Order dated 01/09/2023. However, on January 12, 2023, Defendants 'counsel requested that iMobile's principal be excused from the conference because he was out of state and could not, in any event, fund the settlement. DE [35]. The Court denied Defendants' request without prejudice to renewal upon a submission explaining where the principal was, and when he would be back in New York. See Order dated 01/12/2023. Defense counsel renewed the request asserting that that Defendants' principal would not be available until March or April of 2023. DE [37]. Defendants requested permission to bring the Chief Financial Officer instead. Id. In response to Defendants 'renewed request, on January 17, 2023, this Court canceled the conference "[i]n light of the fact that this appears to be a clear default by Defendant of court ordered obligations of a settlement combined with the deliberately recalcitrant insistence by Defendant that their principal not appear at the conference." Order dated 01/17/2023. Plaintiffs were granted leave to pursue any default remedies at their disposal. Id.

On January 20, 2023, Plaintiff moved for judgment based on the settlement. DE [40]. This Court scheduled an in-person hearing regarding the motion for March 6, 2023 (the "March 6th Hearing"). Scheduling Order dated 01/23/2023. On February 17, 2023,

6

Solomon first informed SLG's Michael Palitz, Esq. ("Palitz"), that he could not attend the March 6th Hearing because he was summoned for jury duty. DE [47-1]. Palitz suggested rescheduling the hearing for an earlier date, while Solomon proposed dates after March 6th. Id. Counsel could not agree on a new proposed date for hearing. Instead, just four days before the hearing, Defendants filed a motion to adjourn the hearing, citing Solomon's New York State Supreme Court jury summons for jury service as the reason. DE [46]. Plaintiff opposed the request. On March 3, 2023, this Court denied the motion to adjourn the March 6th hearing without prejudice to renewal upon Solomon filing his jury duty summons. See Order dated 03/03/2023. That same day, Solomon filed his summons, which showed that he was merely a stand-by juror, and not actually scheduled to appear in-person. DE [49]. Solomon also renewed Defendants 'motion for an adjournment. Id. In a submission filed later that night, Solomon advised the Court that he did not need to attend jury duty on March 6th, because he was not selected as an in-person juror and would therefore be able to attend the scheduled hearing. DE [52].

Prior to the start of the March 6th Hearing (before proceedings began on the record) Solomon called Plaintiff's counsel a "piece of shit." Plt's. Memo, at 8-9. When the hearing began, counsel for Plaintiff accused Defense counsel of misleading the Court by stating the wrong amount of money due to Plaintiffs under the terms of the Agreement. March 6, 2022 Hearing Transcript ("Tr."), DE 57 at 2:25-3:5. Solomon admitted that he had made an error in drafting the opposition and conceded that Plaintiff's figures were correct. Tr. at 5:13-6:1. Upon consideration of the accurate figures and the fact that iMobile had no ability to resume making payments, this Court ordered an accelerated default of the Agreement for $600,000. Id. 6:11-7:12. Finally, upon Plaintiff's request,

7

Plaintiff was granted leave to file a motion for sanctions. Id. 10:1-2.

III. The Motion for Sanctions

Plaintiff was asked at the March 6th hearing to state in this motion whether sanctions were sought against the Defendant and/or counsel. Plaintiff makes clear here that sanctions are sought only against counsel. In support of the motion, Plaintiff claims that defense counsel engaged in a nine-month campaign of vexatious and dilatory conduct that unreasonably delayed this matter. Plt's. Memo, at 6. Plaintiff asserts that Solomon misled this Court regarding his jury summons and with respect to his opposition to Plaintiff's motion for entry of judgment. Id., at 9. Plaintiff also contends that Solomon's vulgar language and Kaufman's discourteous ignoring of communications violates several rules and expectations associated with practicing law. Id., at 8-9. Concisely put, Plaintiff contends that defense counsel's delays and "gamesmanship" were part of an alleged scheme to help Defendants, their client, delay the litigation and ultimately evade collection of the judgment for as long as possible.

Solomon concedes that he used a vulgar and derogatory word in reference to Palitz and apologized for his "lapse in judgment." Solomon Decl., ¶ 22. Solomon also asserts that his motion to adjourn the March 6th Hearing was not misleading because stand-by attendance is "actual attendance" under New York Law. Id. ¶ 14. Defendants also contend that sanctions are inappropriate because their conduct caused no delay, and they did not cause iMobile's default. Id. ¶ 19; see generally, Defs. 'Memo.

DISCUSSION

I. 28 U.S.C. § 1927 and this Court's Inherent Power

A. Legal Standard

8

The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (internal quotation marks omitted). This power may likewise be exercised where the party or the attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258–59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975) (internal quotation marks omitted). An award of sanctions under the court's inherent power requires both "clear evidence that the challenged actions are *entirely without color,* and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks omitted) (emphasis added), cert. denied, 480 U.S. 918, 107 S. Ct. 1373, 94 L. Ed. 2d 689 (1987). A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam).

Under 28 U.S.C. §1927 ("Section 1927"), "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Bad faith is the touchstone of an award under this statute." United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are *so completely without merit* as to require

9

the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d at 1273 (emphasis added); id. ("[A]n award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power...."). "A finding of bad faith in this context requires a district court to determine both that challenged conduct was without a colorable basis and that it was pursued in bad faith, i.e., motivated by improper purposes such as harassment or delay." Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 282 (2d Cir. 2021) (internal quotation omitted). Both "[a] finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." Wolters Kluwer Fin. Servs. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009). Courts in this circuit construe Section 1927" narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Romeo v. Sherry, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004) (quoting Mone v. C.I.R., 774 F.2d 570, 574 (2d Cir. 1985) (internal citations omitted)).

    B. KDV's Conduct

    1.    Delay and Adjournment Requests

Plaintiff argues that KDV's conduct through this relatively short nine-month action caused delays, multiplied proceedings and has ultimately stalled Plaintiffs from being able to collect on their judgment. Plaintiff asserts that KDV's conduct was a tactic to delay the litigation and help iMobile evade payment.

As noted, the present motion seeks sanctions solely against KDV, not Defendants. However, Plaintiff repeatedly impugns KDV's conduct for actions the firm took in connection with their representation and on behalf of Defendants, not KDV. The Court

10

does not appreciate nor condone the at times unprofessional and undoubtedly discourteous behavior among counsel. However, as to delay the Court can make no finding that counsel themselves delayed these proceedings in a manner that supports the imposition of any sanction. Accordingly, the Court declines to impose sanctions against counsel under 28 U.S.C. § 1927 or its inherent authority because the facts regarding any delay do not support a finding of bad faith with the high degree of specificity required. See In re Smith, No. 09-CV-2563, 2011 WL 222146, at *3 (E.D.N.Y. Jan. 21, 2011) (explaining that where sanctions were a "close call" the court declined to sanction under 28 U.S.C. 1927 where it could not "state with certainty that Appellants acted in bad faith").

This Court is aware of the fine line between an attorney zealously advocating for a client and the Court's responsibility for policing sanctionable conduct. In following the case law in the Second Circuit and the Congressional intent in enacting Section 1927, the record is not sufficient to find that KDV acted with the requisite bad faith conduct. While the record is clear that KDV requested adjournments, the record also reflects that none of the requested adjournments were ultimately granted by this Court. It is also clear that any initial delay in these proceedings can be attributed to Plaintiff's counsel by letting two months elapse between the District Court's referral of the Cheeks motion and its uninvited response to that Court regarding consent to the jurisdiction of this Court and seeking to have that Court schedule a Cheeks hearing. While consent to Magistrate Judge jurisdiction is certainly never required, where, as here, the parties had (according to Plaintiff) already agreed to settlement such consent would have undoubtedly led to an earlier disposition of this case. The Court can only speculate as to whether such earlier

11

disposition would have made the settlement any more collectible by Plaintiffs, but the two month delay certainly did not help. Even if the parties were discussing the issue of consent (an issue that is raised on the docket in all civil cases in this District) they could have reached out to this Court at any time to discuss their concerns and desire for an early Cheeks hearing.

Ultimately, this case was in no way delayed due to KDV's conduct. While actual adjournment and delay need not occur for this Court to find conduct has risen to the vexatious level, requesting adjournments on behalf of a client is part of an advocate's duty. The adjournment requests were not withdrawn when Plaintiff opposed them. Rather, defense counsel continued to renew their requests when allowed by the Court. The record is clear that Plaintiffs opposed the requests. However, that is the nature of litigation. Further, all requests other than March 6th Hearing adjournment request were made on behalf of Defendants, the clients, and not counsel. Cf. See Apex Oil Co. v. Belcher Co. Of New York, Inc., 855 F.2d 1009, 1020 (2d Cir.1988) (imposing sanctions under § 1927 where defendant's counsel refused to comply with plaintiff's discovery requests until plaintiff's counsel made a motion to compel). None of the requests rise to the level necessitated for a bad faith finding.

With respect to the record regarding KDV's attempt to adjourn the March 6th Hearing, it is clear that counsel conferred regarding possible alternative dates for the hearing. What is also clear is that counsel did not reach an agreement on a proposed alternative date - with Plaintiff's counsel suggesting earlier hearing dates and defense counsel suggesting later dates. As a reminder, Section III of this Court's Individual Practices only requires that counsel confer prior to making an adjournment request. There

12

is no edict directing that counsel must agree on proposed alternative dates. In fact, Section III specifically sets forth a protocol for advising the Court if no such agreement is reached. Ultimately, whether counsel agree to an adjournment or advancement of a proceeding is just one factor the Court considers when deciding whether to grant such a request. In this case, after consideration, the Court declined to adjourn the March 6th Hearing. However, the fact that KDV did not agree to an advancement of the hearing is not evidence of bad faith. There is no requirement that they must agree to such an advancement. Only that counsel confer before requesting any adjournment.

      While Solomon's specific request for the adjournment - the fact that he had a jury summons for the March 6th date - is a close call, this Court cannot state with certainty that Solomon acted in bad faith. Solomon's original adjournment request made no mention of his stand-by-juror status. It stated only that he was summoned for jury duty on March 6th. It was only after the Court denied his application without prejudice to renewal upon the filing of the jury summons that Solomon disclosed the stand-by-juror status. While the Court is aware that Solomon was not able to ask for a jury summons postponement due to a prior postponement, and that he could have been called as juror to serve on March 6th, the fact is that at the time of the adjournment request he was not actually summoned as an in-person juror. While this is a critical distinction, and one that should have been disclosed in the original adjournment request, Solomon did not lie. A standby juror summons is indeed a juror summons. This Court declines to speculate regarding Solomon's motivations, if any, for failing to disclose the stand-by portion of the juror summons. There are far too many possibilities – not all motivated by bad faith. It could have been an honest belief that merely setting forth that he was summoned was enough

13

for an adjournment request, or that Solomon honestly believed that would be physically called into serve on March 6th. Neither of these motivations evidence the requisite bad faith. See Success Vill. Apartments v. Amalgamated Local, 376, 234 F.R.D. 36, 40 (D. Conn. 2006) ("An award of sanctions under [section 1927] is highly unusual, and requires a finding of bad faith, which can be established where the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.")). In this Circuit, it is very difficult to make the requisite showing for the imposition of sanctions sought by Plaintiff. See Markey v. Lapolla Indus., Inc., No. CV 12-4622 (JS)(AKT), 2015 WL 5027522, at *28 (E.D.N.Y. Aug. 25, 2015) (quoting McCune v. Rugged Ent., LLC, No. 08-CV-2677(KAM), 2010 WL 1189390, at *4 (E.D.N.Y. Mar. 29, 2010)). "Even if the motives of a party or attorney are questionable, a court may nevertheless decline to find bad faith." Id. (internal quotation marks omitted) (quoting Gelicity UK Ltd. v. Jell-E-Bath, Inc., No. 10-CV-5677(ILG)(RLM), 2014 WL 1330938, a *6 (E.D.N.Y. Apr. 1, 2014)). That showing has not been made here. In sum, the Court does not find that KDV's overall litigation conduct was "*so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d at 1273 (emphasis added).

    2.    Solomon's Boorish Comment

All parties agree that prior to the start of the March 6th Hearing, Solomon made an inappropriate and uncouth comment to Palitz. The comment was made off the record and not in the presence of the Court. In opposition to the instant motion Solomon has apologized to both Palitz and the Court. Relying mostly on New York State standards of

conduct, Plaintiff argues that this comment, coupled with the "if you say please" comment constitute the type of conduct that is sanctionable. The Court disagrees.

Although federal courts do not generally enforce state bar disciplinary rules, they have the inherent power to address attorney misconduct that occurs during the course of litigation. See In re Snyder, 472 U.S. 634, 645 n. 6, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985); United States v. Seltzer, 227 F.3d 36, 40–42 (2d Cir. 2000); Handschu v. Police Dep't of the City of New York, 679 F. Supp. 2d 488, 501–03 (S.D.N.Y. 2010). In doing so, they often look to the standards of professional conduct in the state where the federal court sits. See Coggins v. Cty. of Nassau, 615 F. Supp. 2d 11, 30 n. 8 (E.D.N.Y. 2009); Richards v. City of New York, No. 97 Civ. 7990, 2000 WL 130635, at *4 (S.D.N.Y. Feb.2, 2000). Rule 8.4(h) of the New York Rules of Professional Conduct provides that "[a] lawyer or law firm shall not engage in any [ ] conduct that adversely reflects on the lawyer's fitness as a lawyer." Similarly, Rule 8.4(d) proscribes "conduct that is prejudicial to the administration of justice." It is well-established that the use of vulgar, insulting, and offensive language toward an adversary in litigation constitutes a violation of these rules. See In re Chiofalo, 78 A.D.3d 9, 10–11, 909 N.Y.S.2d 36, 37 (1st Dep't 2010) (per curiam) (lawyer sent "hostile, obscene, and derogatory" communications to wife and her attorneys during divorce proceedings); In re Schiff, 190 A.D.2d 293, 294, 599 N.Y.S.2d 242, 242–43 (1st Dep't 1993) (per curiam) (counsel was intimidating and abusive and directed vulgar, obscene, and sexist epithets to adversary during deposition).

The gravity of Solomon's misconduct is mitigated somewhat by the fact that he has recognized the impropriety and has apologized. Nonetheless, it is unfortunate that in the heat of litigation counsel sometimes act contrary to their better judgment and the

standards of professional responsibility. While the Court declines to impose any sanction, Solomon is cautioned that incivility among counsel will not be tolerated and that any similar misconduct in the future may indeed warrant the imposition of sanctions.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions against defense counsel, found at docket entry No. 58 herein, is denied. Nevertheless, attorney Aaron Solomon is cautioned that incivility among counsel will not be tolerated and that any similar misconduct in the future may warrant the imposition of sanctions.

Dated: Central Islip, New York
       September 11, 2023

                                            /s/ Anne Y. Shields
                                            ANNE Y. SHIELDS
                                            United States Magistrate Judge